# DAVIS ET AL. *v.* NEIGHBORS, TRUSTEE, ET AL.

## [No. 5,097.   Filed January 11, 1905.]

1. **APPEAL.**—*Bill of Exceptions.*—*Filing.*—*Failure to Show by Entry.* —*Nunc pro tunc.*—Where the bill of exceptions in a cause was filed, but no entry made of such filing, an entry *nunc pro tunc* may be made thereof, provided some note, minute, memorandum or memorial thereof is made in writing at the time; and the judge's certificate to such bill, together with the clerk's file mark, supplemented with parol evidence, are sufficient to authorize such court to make such *nunc pro tunc* entry.   p. 445.

2. **SAME.**—*Bill of Exceptions.*—*Time of Filing.*—*Presumption.*— Where a bill of exceptions shows it was signed on a certain day and the record shows it was filed on the same day, it will be presumed that such bill was signed by the judge before it was filed.   p. 446.

3. **HUSBAND AND WIFE.**—*Suretyship.*—Where it is shown that a wife never requested a loan, nor requested any person to sign a note for her; that she had no occupation other than as housekeeper; that she was not present when a loan was made, and did not receive any part of the money, directly or indirectly; and that such money was not used for her benefit or on her estate, such facts show that she is a surety.   p. 447.

4. **MORTGAGES.**—*Tenancy by Entireties.*—*Married Woman.*—*Suretyship.*—*Void as to Both.*—A mortgage, executed by a husband and wife as security for the husband's debt, on land held by such husband and wife as tenants by the entirety, is void as to both.   p. 447.

5. **PRINCIPAL AND SURETY.**—*Consideration.*—*Married Woman.*—*Husband's Debt.*—Whether a married woman is principal or surety can not be determined from the form of the contract, but from an inquiry as to who received in person or benefit the consideration upon which the contract rests.   p. 447.

6. **ESTOPPEL.**—*In Pais.*—*Elements.*—To estop a married woman from showing that she is surety on a note and mortgage executed by her and her husband, it must be shown, (1) that there was misrepresentation or concealment, (2) such misrepresentation or concealment was made with knowledge of the facts, (3) party to whom made was ignorant of the truth, (4) such misrepresentation or concealment was made with the intention that the other party should act upon it, (5) the other party did act upon it.   p. 447.

7. **SAME.**—*In Pais.*—*Affidavit of Wife.*—*Knowledge by Payee.*— Though a married woman execute a note and mortgage with her husband, and make an affidavit therewith that she is principal, still if the payee knows such affidavit to be untrue, or exercises no diligence to ascertain the truth thereof, such married woman is not estopped.   p. 448.

From Bartholomew Circuit Court; *Hugh Wickens,* Special Judge.

Action by Emma L. Neighbors, as trustee under the will of Mathias Nauman, deceased, against Fremont Davis and others. From a decree for plaintiff, defendants Fremont Davis and Allie Davis appeal. *Reversed.*

*James F. Cox* and *Clarence E. Custer,* for appellants.
*Marshall Hacker, Ralph H. Spaugh* and *W. W. Lambert,* for appellees.

COMSTOCK, C. J.—This was an action by the appellee Emma L. Neighbors against the appellants and Benjamin W. Chambers and Elmer L. Williams to recover on a promissory note executed by appellants and Benjamin W. Chambers, payable to Elmer L. Williams, who before maturity indorsed said note to appellee Emma L. Neighbors, trustee; and said note was secured by an indemnifying mortgage upon certain real estate in favor of Benjamin W. Chambers, as surety. The appellants, Allie Davis and Fremont Davis, filed a joint answer, and each also filed a separate answer.

The first paragraph of each answer is a general denial. The second paragraph alleges that the property mortgaged was owned by appellants, Allie Davis and Fremont Davis, by entireties; that no part of the money for which the note was given was received by Allie Davis, and no part of the same was applied to the joint use and benefit of Allie Davis and Fremont Davis, and all of said money went to the exclusive use and benefit of said Fremont Davis, and that said Allie Davis was surety on said note.

The first paragraph of each of appellees' replies to said answers is a general denial. The second paragraph of each of said replies alleges matter in estoppel. Said matter in estoppel in each of the replies is, substantially, that appellants were estopped from proving that Allie Davis was

surety on said note, because of certain acts, conversations and representations, and that at the time appellee purchased said note and mortgage, and when the same were assigned to her, she had no knowledge that appellants claimed or asserted that said note was for any other purpose than for appellants' joint use and benefit, or that appellant Allie Davis was surety on said note; that prior to the acceptance of said note by said Williams and the payment of said money by him, and for the purpose of showing and convincing said Chambers and Williams for what purpose said debt was made and contracted, and the use that was to be made of the money to be obtained upon said loan, the said defendant Allie Davis, at the instance and request and with the knowledge and procurement of her husband, said Fremont Davis, made and delivered to said defendant Benjamin W. Chambers her certain affidavit as follows: "Allie Davis, being duly sworn, upon her oath says that she executed the mortgage of even date herewith with her husband, Fremont Davis, on the following real estate in Bartholomew county, State of Indiana, to wit: Forty feet by parallel lines off of the south side of lot number sixteen in Hege and Hill's addition to the city of Columbus; that said real estate is held by her and her said husband as tenants by entirety; that she executed said mortgage jointly with her said husband to indemnify the mortgagee Benjamin W. Chambers, as surety for her and her said husband on two promissory notes, as follows: One to Elmer L. Williams, of date October 9, 1901, and one to George W. Ely, of date August 19, 1901, each for the sum of $300, and each payable one year after the date thereof, with eight per cent. interest from date until paid, without relief from valuation or appraisement laws, and with attorney's fees, and each executed by Fremont Davis and Allie Davis, husband and wife, as principal, and Benjamin W. Chambers as surety for them; and affiant says that she did not sign said notes as surety for her husband or anyone else, and

the money obtained on said notes was for the joint use and benefit of her and her husband, and this mortgage is given to said Benjamin W. Chambers to secure and indemnify him as surety on said notes for her and her said husband against the payment of the same. Allie Davis."

The appellee Benjamin W. Chambers filed a cross-complaint against appellants, Fremont Davis and Allie Davis, alleging suretyship. The appellants answered by a general denial. The court found for appellee Emma L. Neighbors on her complaint, and for Benjamin W. Chambers on his cross-complaint, that appellants were principals on said note given to Elmer L. Williams, and that Benjamin W. Chambers executed said note as surety for them, and that appellants, in order to indemnify and hold said Chambers from the payment of the note, executed a mortgage on the real estate so held by them by entirety; that, after the execution of said note, Elmer L. Williams sold, assigned and transferred the same to appellee. Judgment was accordingly entered against appellants as joint principals, and against Benjamin W. Chambers as surety, and against Elmer L. Williams, as indorser, for $356.40.

The questions presented in this appeal depend for their solution upon the consideration of the evidence. Counsel for appellee insist that the evidence is not in the record. It is pointed out that it does not appear that the bill of exceptions containing the evidence was filed with the clerk after having been signed by the judge. The record shows that the longhand transcript of the evidence was filed in the office of the clerk on the 3d day of December, 1903; that the bill of exceptions attached to said transcript is the original bill of exceptions filed in said office on the —— day of December, 1903. Neither the record nor the certificate shows the bill was filed with the clerk after having been signed by the judge December 12, 1903. What purports to be the certificate of the clerk to the transcript shows no time of filing the bill of exceptions. The certificate leaves

the time of such filing blank, and the attestation of the clerk contains no date.

After the cause had been submitted upon appeal, and been briefed by counsel on both sides, appellants procured a *nunc pro tunc* entry to be made in the court below, and the same is in the record by *certiorari,* showing that the said bill of exceptions was filed in the office of the clerk of said court on the 12th day of December, 1903, after the same had been approved and signed by the trial judge. Said entry was based alone upon the facts that the bill of exceptions was indorsed as follows: "Filed in open court on the 12th day of December, 1903, William F. Barrett, clerk"— supported by the affidavit of William F. Barrett, which said that when the bill of exceptions was filed on the 12th day of December, 1903, it had been approved and signed by the judge who presided in said cause; that when the bill was so filed he omitted the indorsement hereinbefore set out; that no independent entry of said filing was made; that the date of his certificate to the transcript was inadvertently omitted; and that the date, December 12, 1903, should have been written therein.

1.   Appellees have separately filed cross-errors challenging the action of the court in granting the petition for a *nunc pro tunc* entry. In support of the cross-errors it is claimed that there was no minute nor record to authorize the amendment of the record to show that the bill of exceptions was filed with the clerk after it was signed by the judge. A court is necessarily invested with the authority to make its record speak the truth. The right is not questioned here, but, rather, upon what proof such right may be exercised, and such correction made. "There are authorities of the greatest respectability which hold that the facts and terms of a record may be found upon any evidence by which they are clearly and satisfactorily established." 17 Ency. Pl. and Pr., p. 931. In Elliott, App. Proc., §213, the learned authors say: "It is declared by our courts and by other

courts that upon a motion for a *nunc pro tunc* entry, parol evidence is competent. But there is much confusion in the decided cases and it is not easy to extract a rule from them. We have, however, concluded upon an examination of our own and other cases, that the true rule is that while parol evidence is competent it is not of itself, unaided by any note, minute, or memorial, sufficient to authorize a *nunc pro tunc* order."

2. The indorsement on the bill of exceptions by the clerk does not furnish positive proof that at that time, to wit, December 12, 1903, the bill had been signed by the judge. The affidavit of the clerk is parol evidence of the facts that it recites, but to act upon it alone would be to rely merely upon memory. But if the memorandum and the affidavit taken together do not sufficiently show that the bill was signed before it was filed, still, because of presumptions that are indulged in favor of the action of the trial court, the evidence must be held to be in the record. The statute (§641 Burns 1901, §629 R. S. 1881 and Horner 1901) provides that the party objecting to a ruling of the trial court must except and present to the judge a proper bill of exceptions, which, if true, he shall promptly sign and cause it to be filed in the cause. It will be presumed that the judge did his duty, and had the bill filed after he had signed the same. "The bill of exceptions containing the evidence in this case appears to have been signed by the judge and filed in open court on January 20, 1899. We are therefore bound to presume, under such circumstances, nothing to the contrary appearing, that the bill was filed after it had been signed by the trial judge." *Minnick* v. *State, ex rel.* (1900), 154 Ind. 379. The above case is decisive of the question under consideration.

Holding that the evidence is properly in the record, it remains to consider reasons set out in the motion for a new trial. One of these is that the decision of the court is not sustained by sufficient evidence and is contrary to law.

3.   It is shown without conflict that the appellee Allie Davis never requested a loan of her codefendant Williams, nor did she request her codefendant Chambers to sign a note for her.   She had no occupation or business other than that of a housekeeper.   She was not present when the loan was made, and did not receive any part of the money directly or indirectly.   It was not expended either for her use or benefit, nor for the betterment or improvement of any estate in which she had an interest.   Such facts show that she signed the note as surety of her husband.   The contract of suretyship, whether as indorser, guarantor or in any other manner, of a married woman is void as to her.   §6964 Burns 1901, §5119 R. S. 1881.

4.   A mortgage executed by husband and wife upon the real estate owned by them as tenants by entireties to secure the individual indebtedness of the husband is voidable not only as to the wife, but as to the husband as well.   *Abicht* v. *Searls* (1900), 154 Ind. 594, and cases cited.

5.   Whether a married woman is principal or surety will be determined, not from the form of the contract, nor from the basis upon which the transaction was had, but from the inquiry, was the wife to receive in person, or in benefit to her estate, or did she receive, the consideration upon which the contract rests?   *John C. Groub Co.* v. *Smith* (1903), 31 Ind. App. 685; *Vogel* v. *Leichner* (1885), 102 Ind. 55; *Field* v. *Noblett* (1900), 154 Ind. 357; *Nixon* v. *Whitely, etc., Co.* (1889), 120 Ind. 360; *Voreis* v. *Nussbaum* (1892), 131 Ind. 267, 16 L. R. A. 45; *Cook* v. *Buhrlage* (1902), 159 Ind. 162.

6.   If appellant Allie Davis is to be held at all, it must be upon the ground that she is estopped from claiming that she is surety on the note in suit.   To estop her from making such claim, it should appear from the evidence:   (1) That there was a misrepresentation or concealment of material facts; (2) that the misrepresentation was made with knowledge of the facts; (3) that the party to whom it was made

was ignorant of the truth of the matter; (4) that it was made with the intention that the other party should act upon it;. (5) that the other party was induced to act upon it to his injury.

7. An estoppel can only be predicated upon a wrong. It can not exist, however, if the person dealing with a married woman either knew the fact or was ignorant from a failure to inquire. *Orr* v. *White* (1886), 106 Ind. 341. Among other statements contained in the affidavit upon which the appellees rely to sustain the claim of estoppel, it is stated that said real estate is held by her and her said husband as tenants by the entireties; that she executed said mortgage jointly with her said husband to indemnify the mortgagee Benjamin W. Chambers as surety for her and her said husband on two promissory notes as follows: One to Elmer L. Williams, of date October 9, 1901; one to George W. Ely, of date August 19, 1901—each for the sum of $300, etc. The Ely note referred to was executed some months prior to the execution of the note in suit. The money for which the Ely note was given was borrowed and used by the husband for his own benefit before his wife had signed it. This fact appellee Chambers knew. The facts disclosed by the evidence show that Chambers and Williams both knew that Allie Davis received no consideration, and was simply surety on the note sued on, and they were not wronged by the statement contained in her affidavit.

As the statute puts a married woman under disability, there can be no recovery upon a suretyship undertaking except where the facts were such that the person who accepted was reasonably justified in supposing, and did suppose, that she was not only principal in name, but also in fact. In all ordinary circumstances, at least, there must be some degree of active diligence upon the part of the lender to ascertain the purpose for which a woman whom he knows to be married is borrowing money. The evidence

shows no diligence to ascertain the facts.    *Field* v. *Camp-bell* (1905), 164 Ind. 389.

The loan had been negotiated in the case at bar with the husband, and the surety desired an affidavit that the loan was a joint one and the wife was a principal. It was made by the wife at the instance of the husband. The wife was not present when the affidavit was delivered, and denied that she knew its contents, or when the loan was consummated. It is not necessary that the party loaning the money should have been a party to the violation of the statute, but the law can not be violated by the device of an affidavit.

It is also claimed that the court erred in the admission of certain evidence. The conclusion reached renders it unnecessary to consider this reason for a new trial.

Judgment reversed, with instructions to sustain appellants' motion for a new trial.