## RAMSEY ET AL. v. W. MCMILLAN & SON.

[No. 6,226. Filed March 12, 1908. Rehearing denied June 2, 1908.]

1. PLEADING.—*Answer.—Estoppel by Conduct.*—In a suit to restrain defendant from discharging slush and sand so as to flow upon plaintiffs' land, thereby destroying plaintiffs' watercourse, an answer that plaintiffs stood by and made no objections to defendant's erection of its stone sawmill and sold to the defendant the land to be used for switching purposes, knowing that its stone sawmill would cause slush and sand to be so discharged, fails to show an estoppel by conduct. p. 20.

2. SAME.—*Answer.—Estoppel by Contract.*—In a suit to restrain defendant from operating its stone sawmill in such manner as to discharge slush and mud upon plaintiffs' land, thereby destroying plaintiffs' watercourse, an answer showing that plaintiffs sold to defendant land adjacent to that occupied by its stone sawmill, to be used for switch purposes, knowing the use intended, is bad, where the contract expressly provided that defendant should "at all times" protect such watercourse. p. 21.

3. SAME. — *Answer. — Estoppel. — Destroying Watercourse.* — In a suit to restrain defendant from destroying a watercourse by the discharge of slush from its stone sawmill, an answer that defendant purchased from plaintiffs a tract of land on which to locate a switch to be used for the transportation of the products of defendant's stone sawmill, "with a knowledge of such natural result," is insufficient, especially where the contract of sale provided that defendant should at all times protect plaintiffs from any damages that might be caused. p. 21.

4. SAME.—*Answer.—Inconsistencies.—Nuisance.*—In a suit to restrain defendant from destroying a watercourse by discharging slush and sand into it, an answer expressing a willingness to pay for the damages caused, and offering to avoid such discharge if plaintiffs would grant an outlet for a drain over their land, is a virtual admission of a cause of action, and is insufficient. p. 21.

From Monroe Circuit Court; *James B. Wilson*, Judge.

Suit by John Ramsey and another against W. McMillan & Son (a corporation). From a decree for defendant, plaintiffs appeal. *Reversed.*

*East & East*, for appellants.

*Miers & Corr* and *J. E. Henley*, for appellee.

ROBY, C. J.—Action by appellants. The complaint was in one paragraph. It was alleged that appellants owned and occupied as a home a farm in Monroe county, suitable for cultivation and for raising high-grade stock; that appellee was a corporation engaged in the general business of sawing, planing and marketing stone, and owned a large plant, consisting of stone sawmills, operated by heavy machinery, engines and power, in said county, and in connection therewith operated a gang of saws used for sawing large blocks of stone; that large quantities of water and sand were used in the operation of such saws, and that there were daily discharged from said plant, which was immediately east of appellants' land, thousands of gallons of water and sand in the form of slush and mud; that on August 12, 1904, appellants conveyed to appellee certain real estate for a railroad switch, and at that time a written agreement was made, a copy of which is filed with the complaint, by which appellee agreed that it would protect appellants at all times from any damage that might be caused to their lands by said slush and offal from said sawmills; that on the line between the lands of appellants and appellee there was a valuable spring, from which a large volume of pure water flowed into a stream running across said lands in a westerly direction; that said stream had banks on either side, and flowed into a valuable pond on appellants' land, and furnished water in a sufficient quantity the year around for all the cattle and stock of appellants, and constituted their only supply for such purpose; that the fields on either side of said stream were used for pasture, and until August 12, 1904, appellants used the water of said stream for cooking, washing and for the table; that said spring and stream were of great value, and greatly enhanced the value of said farm, as appellee well knew; that ever since August 12, 1904, appellee has wilfully operated said sawmills, and, in violation of the appellants' rights, discharged therefrom large quantities of filthy matter, mud, slush and sand, and with a large force pump has drawn

large quantities of water from Clear creek, running the same through said sawmills, together with several carloads of sand, and has deposited the same in the form of slush so near said spring and branch that the same has daily emptied into said stream, and thereby polluted the waters of said spring, branch and pond, and rendered the same unfit for drinking purposes, for family use and for stock; that the water of said spring, stream and pond has become dirty and of a muddy color, thickened with sand, mud and particles of stone, which has extended across appellants' lands, accumulated, settled in and filled up the channel of said stream, and if continued will soon overflow the banks of said stream; that said sediment and deposit are upon the pasture land on either side in many places.

Facts showing special damage to appellants and depreciation of the value of their land are set out in considerable detail. It was averred that the pollution of said waters constituted an irreparable injury to appellants; that the pollution of said stream as alleged constituted a nuisance; that adequate damages therefor could not be determined and assessed; that appellee will, unless enjoined therefrom, continue to pollute said stream, and will eventually destroy it, to the irreparable injury of appellants and of the citizens generally; that appellee has failed to carry out its agreement as aforesaid, has repudiated the same, and refused to protect appellants from damage, although called upon so to do, and that appellants have fully performed said agreement upon their part. Appellants say they have been damaged in the sum of $2,000. The prayer is for a perpetual injunction and for damages.

The contract referred to is in terms as follows:

"This, an agreement made and entered into this 12th day of August, 1904, by and between W. McMillan & Son (a corporation) of the first part, and John and Mary Ramsey of the second part, witnesseth; That whereas said second party has sold to said first party a certain piece of land to be used as a switch to its stone-

mill, and, as a part of the consideration for said land, said first party agrees at all times to protect said second party from any damage that might be caused to their land by slush and stone, by reason of said first party's operating a stone-mill on its premises just east of said second party's land.''

An answer in five paragraphs was filed. The first paragraph was a general denial. A demurrer for want of facts was sustained to the second and fifth paragraphs and overruled as to the third and fourth paragraphs. The action of the court in overruling said demurrers is separately assigned for error.

In the third paragraph it is averred that appellants had full knowledge of the fact that the operation of the mill would be accompanied by the discharge of sand, water and slush, and that, owing to the topography of the ground, the same would run upon their lands, and that with such knowledge they stood by and allowed appellee to go to the great expense of $75,000 in the construction and equipment of sawmills; that appellants made no objection to the location of the mill, but, on the contrary, sold to the appellee a small tract of land upon which to construct a spur or switch, and that at the time of making the agreement, which is before set out, the appellants well knew that such discharge would be inevitable, and that all the parties "at the time of such agreement fully understood and contemplated such natural and obvious result; that they contracted with a view of such result being had.'' Wherefore the appellee claims that the appellants are estopped from enjoining it from permitting the slush to flow upon their land. The elements necessary to an estoppel by conduct frequently have been stated. *Pierce* v. *Vansell* (1905), 35 Ind. App. 525; *Davis* v. *Neighbors* (1905), 34 Ind. App. 441. None of the elements necessary to such an estoppel is disclosed by the facts pleaded.

If the pleading be construed as relying upon a contract by

which the right to discharge said slush upon appellants' land is granted, the answer must be that instead of the granting of such a right by appellants the undertaking is by appellee "at all times to protect" appellants from any damage that might be caused.

In the fourth paragraph appellee avers that the discharge of "slush, water and sand from defendant's mill in and upon the lands of the plaintiffs is not wrongful or illegal, for the reason that the plaintiffs and defendant contracted as set out in exhibit 'A,' filed herewith and hereof made a part, with a knowledge of such natural result." The law relative to the class of relations involved herein has been recently and fully discussed. *American Plate Glass Co.* v. *Nicoson* (1905), 34 Ind. App. 643; *Muncie Pulp Co.* v. *Koontz* (1904), 33 Ind. App. 532; *Weston Paper Co.* v. *Pope* (1900), 155 Ind. 394, 56 L. R. A. 899; *Muncie Pulp Co.* v. *Keesling* (1906), 166 Ind. 479; *West Muncie Strawboard Co.* v. *Slack* (1904), 164 Ind. 21; *Pittsburgh, etc., R. Co.* v. *Town of Crothersville* (1902), 159 Ind. 330.

The contract referred to in the pleading, being made as averred with knowledge of the natural result of operating said mill, contemplated the protection of appellants from any damage that otherwise might be caused by the operation of such mill, and, instead of releasing appellee from any obligation in that regard which might otherwise exist, expressly bound it in that behalf, as therein stated.

Further averments of this paragraph are inconsistent with the conclusion that appellee has done no wrong in that it expressed a willingness to pay "any damages sustained up to this time on account of such discharge." Other averments are to the effect that appellee has offered to protect appellants in a specified manner, but that appellants have refused to permit it to construct a drain over their land, which would divert the sand and slush from the stream. This paragraph was also insufficient, and the demurrer to it should have been sustained: It does not deny appellants' equity.

It merely points out a possible means whereby the nuisance can be abated, viz., the construction of a drain across appellants' land. The question as to whether appellants have refused an offer so to drain the slush is immaterial. It is appellee's duty to take reasonable measures to "protect" the land from damage, and it does not appear that it has been prevented from so doing.

The judgment is reversed, and the cause remanded, with instructions to sustain appellants' demurrers to the third and fourth paragraphs of answer.