## SIMMONS v. PARKER ET AL.

[No. 8,920. Filed March 31, 1916.]

1. APPEAL.—*Review.—Demurrer to Complaint.—Action Prema-. turely Brought.*—The sustaining of a demurrer to a complaint was not error, where it affirmatively appeared that the action was prematurely commenced. p. 406.

2. APPEAL.—*Review.—Evidence.—Findings.*—Where the evidence showed that in an exchange of real estate one of the parties to the trade agreed to execute a mortgage to the other to secure the latter on account of assuming an indebtedness of the former on property transferred, upon condition that certain property, which the party agreeing to execute the mortgage had not seen, should on investigation prove to be as represented in the negotiations, the court

was warranted in finding that the promise to execute the mortgage and to pay the sum secured thereby was conditional rather than absolute; and in view of further evidence that on investigation the property as to which the representations were made proved to be materially different in value and title than as represented, a finding of the nonexistence of a promise to pay was also warranted.     p. 411.

3.  MORTGAGES.—*Delivery.—Evidence.*—Where there was evidence to show that at the time of effecting an exchange of real estate, there was an agreement by one of the parties to execute a mortgage on condition that subsequent investigation should prove that property received by him was as represented in the negotiations, and that thereafter, while the wife of such party was away investigating the property such party executed a note and mortgage and placed it in the hands of the other party for the purpose of procuring the signature of the mortgagor's wife in case the property investigation proved satisfactory, such delivery did not constitute a delivery of the mortgage, and the mortgagee could base no right thereon as against the mortgagor or his wife.     p. 412.

4.  MORTGAGES.—*Delivery.—Validity.*—To constitute a valid delivery of a mortgage, the act must combine with an intent to that end.     p. 412.

5.  HUSBAND AND WIFE.—*Mortgages.—Nonjoinder of Wife.—Extent of Lien.*—Where a husband takes title to real estate in his own name and executes a mortgage thereon to secure the payment of the purchase money, such mortgage is a valid lien upon the entire title, and the wife has no interest inchoate or otherwise as against the mortgage regardless of whether she joins in its execution; but as a general rule a mortgage by the husband alone on lands held by the entireties, to secure the payment of his individual debt, can not be established as a lien against such land or enforced against either him or his wife.     p. 413.

6.  VENDOR AND PURCHASER.—*Vendor's Lien.—Taking of Mortgage.*—The taking of a mortgage by the vendor on property sold to husband and wife by the entireties, though invalid because signed by the husband alone and without the wife's knowledge or consent, indicated a purpose not to waive any lien growing out of the transaction, and was therefor not inconsistent with the existence of a vendor's lien.     p. 415.

7.  VENDOR AND PURCHASER.—*Vendor's Lien.—Establishment Against Lands in Hands of Wife.*—Where a husband purchases land, and executes his own note for the purchase price, which note remains unpaid, and causes the land to be conveyed to his wife, who pays no consideration therefor, the wife is a mere volunteer and the vendor may establish a lien against the land; and he may also establish such lien where the wife pays the purchase price in part and the husband executes his note for the balance.     p. 415.

8. VENDOR AND PURCHASER.—*Vendor's Lien.*—The technical relation of vendor and vendee is not necessary to the existence of a vendor's lien.    p. 415.

9. HUSBAND AND WIFE.—*Tenancy by Entireties.*—A tenant by the entireties owns merely the entire estate, and, if owned in fee, such an estate is not greater in quantity than any other estate in fee. p. 416.

10. VENDOR AND PURCHASER.—*Vendor's Lien.*—*Enforcement Against Tenants by Entireties.*—Where a husband and wife took title to land by the entireties, the wife being a purchaser for value, and it was distinctly understood between the parties that no indebtedness should arise against either the husband or wife on account of such transaction, except on condition that certain other property acquired should on investigation prove to be as represented by the grantor, and pending such investigation by the wife the husband alone execûted a note and also a mortgage on the property held by the entireties, which he delivered to the grantor to be signed by the wife in the event the investigation proved to be satisfactory, and the condition failed by reason of such other property not being as represented, neither the husband nor the wife owed any debt and no vendor's lien arose as against the property held by the entireties.    p. 416.

11. MORTGAGES.—*Assignments.*—*Vendor's Lien.*—*Estoppel.*—While a mortgage lien will pass by assignment of the mortgage, and a vendor's lien, being a mere incident of the debt, will pass by assignment of a purchase money note, grantees who held by the entireties were not estopped from contesting the existence of a lien upon either theory as against the assignee of a mortgage and not purporting to be for an unpaid portion of the purchase price, and which were executed by one of the grantees without the other's knowledge and consent, and contrary to an express understanding between the grantor and grantees that no indebtedness whatever should arise against either of the grantees by reason of the conveyance, except upon the fulfillment of a certain condition which never materialized; and especially in view of the fact that such assignee was an assignee with notice.    p. 417.

12. MORTGAGES.—*Assignment.*—*Notice of Infirmity.*—Where the attention of the assignee of a purported purchase money note and mortgage was specifically directed to the fact that the name of both husband and wife appeared in the body of the mortgage, which was signed by the husband alone, and he was informed that they held title by the entireties to the premises described, which fact was also disclosed by the deed record, and it appeared that he also knew that the wife had refused to sign the mortgage because of certain misrepresentations of the grantor, such assignee was charged with the duty of inquiry.    p. 417.

13. MORTGAGES.—*Vendor's Lien.*—*Rights of Subsequent Grantee*—Although the facts were sufficient to place a subsequent grantee

on inquiry as to a supposed mortgage and vendor's lien against the property, he was not precluded from having his title quieted against one asserting such liens, even though he made no such inquiry, where inquiry if made would have disclosed the non-existence of the alleged liens. p. 418.

From Marion Circuit Court (21,075); *Charles Remster*, Judge.

Action by John B. Simmons against Clint Parker and others. From the judgment rendered, the plaintiff appeals. *Affirmed.*

*Robinson, Symmes & Marsh*, for appellant.
*Emsley W. Johnson* and *Joseph* W. Hutchinson*, for appellees.

Caldwell, J.—Appellant filed his complaint in two paragraphs. In each he declared on a promissory note, alleged to have been executed by appellee Benjamin F. Meyers, and endorsed by appellees Kuntz and Kuntz. In each paragraph he prayed a personal judgment against appellees, Benjamin F. Meyers and Julia A. Meyers, his wife, and Martin J. Kuntz and Elizabeth M. Kuntz, his wife. By the first paragraph, he sought also to foreclose against certain real estate owned by appellee, Clint Parker, a mortgage alleged to have been executed by Benjamin F. Meyers to secure the note. By the second paragraph, in addition to a personal judgment as aforesaid, he sought to have declared and enforced against such real estate a vendor's lien in the amount of the note. The demurrer of each appellee to each paragraph of the complaint was sustained. In such ruling there was no error, as each

1. paragraph disclosed affirmatively that the action was prematurely commenced. The note by its terms matured December 26, 1912, while the action was commenced March 28,

1912. *Indianapolis, etc., R. Co. v. First Nat. Bank* (1893), 134 Ind. 127, 33 N. E. 679; *Walter A. Wood, etc., Co. v. Caldwell* (1876), 54 Ind. 270, 23 Am. Rep. 641; *Middaugh v. Wilson* (1902), 30 Ind. App. 112, 65 N. E. 555; *Norris v. Scott* (1892), 6 Ind. App. 18, 32 N. E. 103, 865; *American, etc., Trust Co. v. Gibson County* (1906), 145 Fed. 871, 76 C. C. A. 155, 7 Ann. Cas. 522; 1 R. C. L. 341, 1 C. J. 1152; 31 Cyc 291.

Appellees Clint Parker and Hattie F. Parker, his wife, filed a cross-complaint, whereby they sought to quiet their title to a certain lot No. 15 in Beech Grove, Marion County, Indiana, being the real estate described in the mortgage, against all claims of appellant and coappellees thereto. Appellees Meyers and Meyers disclaimed. Appellant answered in general denial and filed also certain paragraphs which he designated cross-complaints, whereby he brought to the attention of the court the same facts as pleaded in his complaint, and prayed as affirmative relief that the lien of said mortgage and in the alternative that a vendor's lien in the amount of the note be declared and established against the real estate. The issues being closed by general denials, the cause was tried by the court without a jury, resulting in a judgment and decree quieting title in appellee Clint Parker, against all claims of appellant and appellees Meyers and Meyers and Kuntz and Kuntz.

If there is evidence to sustain the decision in its material aspects, under the rule that governs on appeal, this cause must be affirmed. The evidence in some respects is contradictory. As tending to support the decision, it is in substance as follows: December 26, 1910, Kuntz and Kuntz were the owners of the real estate described in

the cross-complaint and also of two other tracts situated in Beech Grove, and one tract in Hartsville, and they claimed to own a residence property in Marion, Indiana. At the same time, Meyers owned an 80-acre farm in Michigan, and held also of Patterson M. Hearn a contract to purchase a 90-acre farm situate in Bartholomew County, the deed to be made on the payment of $475, the balance of the purchase price. Appellee, Julia A. Meyers owned an 80-acre farm in Bartholomew County. Each of these parcels of real estate was encumbered. On said day Kuntz and Kuntz executed their deeds, by which they conveyed to Meyers and Meyers by entireties the above five tracts of land owned by the former, in consideration of which the latter conveyed to the former the Michigan farm and Mrs. Meyers' Bartholomew County farm, and also procured Hearn to convey to Kuntz and Kuntz the 90-acre Bartholomew County farm. To procure the last named conveyance to be made, Kuntz and Kuntz executed to Hearn a mortgage on the 90-acre farm, to secure the payment of the $475 due the latter from Meyers. There is conflict in the evidence as to the circumstances under which Kuntz and Kuntz assumed and agreed to pay the $475 to Hearn. On this subject there was evidence to the following effect: Meyers and Meyers had not seen the Marion residence property prior to the trade. There was evidence that Kuntz represented it to them as an eight-room residence property in good condition, rented at $10 per month, worth $3,000, with no encumbrance except a $750 mortgage, with thirty months to run; that since Meyers and Meyers had not inspected this property, Mrs. Meyers should have the privilege of doing so, and that if she found it as represented, she and her husband were to

execute to Kuntz and Kuntz a note for $475, secured by mortgage on lot 15, described in the cross-complaint; that if the Marion property was not found to be as represented, no note or mortgage should be given. Kuntz testified that he had never seen the Marion residence property, and that he had no knowledge of its condition or title, except as represented to him by the person from whom he purchased it three months before he traded it to Meyers and Meyers.

The evidence is without contradiction that Mrs. Meyers refused to sign the note and mortgage until she had inspected the Marion property. Early in January, Kuntz called on Meyers and Meyers at their home in Bartholomew County for the purpose of procuring the execution of these instruments. Mrs. Meyers, however, had not made her trip to Marion. The note and mortgage therefore were not executed. She went to Marion in the latter part of January. While she was absent, Kuntz again called on Meyers. At this time Meyers signed the note and signed and acknowledged the mortgage. The latter bears date of January 28, 1911. The note, however, is dated December 26, 1910, it having been antedated. There was evidence that, to procure Meyers to sign the instruments, Kuntz made further representations respecting the Marion property. Meyers informed Kuntz that Mrs. Meyers intended to stop at the Kuntz home in Beech Grove as she was returning from Marion, and that she at that time would sign the note and mortgage if the Marion property was found to be as represented. Apparently for such purpose, the instruments were delivered into the possession of Kuntz. There was uncontradicted evidence that Mrs. Meyers found the Marion property to be in

a dilapidated condition; that it had been tenantless for three years; that it had been sold on mortgage foreclosure, and that the year for redemption had about expired. Mrs. Meyers as she returned from Marion stopped at the Kuntz home, but under the circumstances she refused to sign the note and mortgage. Kuntz testified that she gave as an additional reason that there was some misunderstanding between her and her husband respecting property rights. The note signed by Meyers bears date of December 26, 1910, due in two years, principal $475, with interest at 6 per cent payable to Martin J. Kuntz and Elizabeth M. Kuntz, signed only by Benjamin F. Meyers. The mortgage designates Meyers and Meyers, husband and wife, as mortgagors, and Kuntz and Kuntz as mortgagees, describes said lot 15 as the real estate mortgaged to secure the note above described. It shows on its face that it was signed and acknowledged by Benjamin F. Meyers alone, under date of January 28, 1911. It was duly recorded May 6, 1911. Kuntz and Kuntz endorsed the note to appellee August 10, 1911. By a writing on the mortgage, acknowledged September 9, 1911, and duly recorded October 25, 1911, they transferred the mortgage to appellant. There was evidence that appellant paid full value for the note and mortgage.

In the transaction by which the note and mortgage were transferred to appellant, his attention was directed to the fact that Mrs. Meyers had not signed them. He was informed that the title to lot 15 was held by Meyers and Meyers as husband and wife, and that Mrs. Meyers had refused to sign the note and mortgage, because the Marion property was not as represented. Kuntz said to him, however, that the note represented a part of

the unpaid purchase price of the lot. By a deed executed August 25, 1911, and recorded August 26, 1911, Meyers and Meyers conveyed lot 15 to appellee Clint Parker. Prior to accepting this conveyance, Parker caused the title to the lot to be abstracted. The abstracter overlooked the mortgage mentioned above, and as a consequence, the abstract did not show its existence. Parker had no actual knowledge that there was such a mortgage, or that there was any part of the purchase price of the lot unpaid. He had only such constructive notice as the records of the recorder's office afforded him. From the fact of such records, he stood charged with constructive notice that there was such a mortgage; that it had been executed by Benjamin F. Meyers; that it had not been executed by Mrs. Meyers, and that the real estate described in the mortgage was held and owned by the former and his wife as tenants by the entireties.

Proceeding to a consideration of the sufficiency of this evidence, it appears that, in order that the respective conveyances might be consummated, it was necessary that Hearn be paid the amount due him from Meyers. To that end, Kuntz assumed such indebtedness and secured it by a mortgage on the 90-acre farm, and subsequently paid it. Under such circumstances, if Meyers and wife agreed to pay Kuntz and wife an equal amount, the debt thereby created represents an unpaid balance of the purchase price of the tracts of real estate conveyed to Meyers and wife, including lot 15. The court, however, was warranted in finding that the promise of Meyers and wife to pay such sum, and to secure it by note and mortgage was conditional rather than absolute. There was evidence that said sum was

to be secured and paid only in case the Marion property proved on inspection to be as represented. The testimony of Mrs. Meyers was emphatic to that effect. She is corroborated by Meyers and also by the circumstance that the note and mortgage were not required to be executed at the time of the execution of the deeds. As we have said, the uncontradicted evidence established that the condition upon which the note and mortgage were to be executed failed, in that the Marion property proved to be materially different in value and title from as represented, and in fact proved to be practically worthless. It follows that the court was warranted in finding the nonexistence of a promise to pay on the part of Meyers and wife. True, Meyers signed the instruments, but the evidence is sufficient to support a finding that they were not delivered. There was evidence that Meyers placed such instruments in the possession of Kuntz only for the purpose of procuring Mrs. Meyers' signature thereto, in case the Marion property was found to be as represented. Meyers testified that he signed the instruments and surrendered them to Kuntz "on condition if everything was satisfactory when we looked at that Marion property". To constitute a valid delivery of an instrument, an act must combine with an intent to that end. There was evidence that the element of intent did not exist. *Stokes* v. *Anderson* (1889),118 Ind. 533, 21 N. E. 331, 4 L. R. A. 313, note; *Goodwin* v. *Owen* (1876), 55 Ind. 243. In such view of the case, Kuntz and Kuntz could have based no right on the instruments as against either Meyers or his wife.

But since Kuntz and Kuntz paid Meyers' debt to Hearn, if we should assume as argued that Meyers in consideration thereof executed the note as a

binding obligation and likewise the mortgage for the purpose of securing its payment, a question is presented respecting the rights of the parties while Kuntz and Kuntz still held the instruments, and Meyers and wife yet held the title to lot 15. Where a husband purchases real estate, taking the

5. title in his own name, and executes a mortgage on such real estate to secure the payment of the purchase money or a part thereof, such mortgage is a valid lien upon the entire title and the wife has no interest inchoate or otherwise in such real estate as against the mortgage and regardless of whether she joins in its execution. §3033 Burns 1914, §2495 R. S. 1881; *Denton* v. *Arnold* (1898), 151 Ind. 188, 193, 51 N. E. 240; *Fowler* v. *Maus* (1895), 141 Ind. 47, 40 N. E. 56; *Bowman* v. *Mitchell* (1884), 97 Ind. 155, 157; *Baker* v. *McCune* (1882), 82 Ind. 339; *Seibert* v. *Todd* (1889), 31 S. C. 206, 9 S. E. 822, 4 L. R. A. 606, note. The lands here, however, were purchased by Meyers and his wife, and title taken by entireties. The debt paid by Kuntz to Hearn, was a debt of Meyers' alone. An obligation against Mrs. Meyers could not grow out of the payment of such debt in the absence of a promise on her part to that end, and there was no such promise. If Meyers executed the note here, in consideration of the payment by Kuntz to Hearn, such note was not only his individual obligation, but also it represented his individual debt. The mortage was executed to secure the payment of the note. It is a general rule that a mortgage executed by a husband alone on lands held by entireties, to secure the payment of his individual debt may not be established as a lien against such land or enforced against either him or his wife. *Thornburg* v. *Wiggins* (1893), 135 Ind. 178, 34

N. E. 999, 41 Am. St. 422, 22 L. R. A. 42; *Chandler* v. *Cheney* (1871), 37 Ind. 391. The rule is the same where the wife joins in the execution of the mortgage. *Dodge* v. *Kinzy* (1885), 101 Ind. 102; *Abicht* v. *Searls* (1900), 154 Ind. 594, 57 N. E. 246; *Davis* v. *Neighbors* (1905), 34 Ind. App. 441, 73 N. E. 151. Mrs Meyers was not a mere volunteer in the transaction involved here. In addition to releasing her inchoate interest in her husband's lands, she parted with title to her own farm in consideration of the conveyance to her and her husband by entireties. Neither can it be said that she was a purchaser with notice of the existence of the note and mortgage. These instruments were not in existence at the time of such conveyances. As we have said, there was substantial evidence that their future execution depended on a condition which failed. She did nothing at any time to validate the instruments. Under such circumstances, we are not required to pass on the suggested question of whether a mortgage executed by the husband alone on lands purchased by the husband to secure the payment of his debt representing the unpaid purchase price of such land, may be enforced against such lands, where, at the request of the husband, they are conveyed by the vendor to himself and wife as tenants by the entireties, the wife being a mere volunteer, with notice of the facts. In such a case, however, the execution of the deed and mortgage being parts of the same transaction, the equities of the situation would seem to require that such a mortgage be enforced although the wife was not a party to it, and therefore did not subscribe to its specific terms. Under the circumstances of the case at bar, however, it is our judgment that the mortgage here was without effect as against Mrs. Meyers,

and hence that it was nonenforceable by Kuntz and Kuntz as against lot 15, while the title thereto was held by her and her husband. She took title to such lot with the distinct understanding that such a mortgage should not be executed by her or her husband unless the Marion property proved to be as represented. It was shown to be otherwise by uncontradicted evidence.

Turning our attention to the vendor's lien phase of the case, the mortgage here was, as we have held, without legal validity. The fact that 6. it was taken indicated a purpose not to waive whatever lien, if any, grew out of the transaction. The taking of the mortgage therefore is not inconsistent with the existence of a vendor's lien. *Scott* v. *Edgar* (1902), 159 Ind. 38, 63 N. E. 452; *Gilbert* v. *Bakes* (1886), 106 Ind. 558, 7 N. E. 257; *Bakes* v. *Gilbert* (1884), 93 Ind. 70; *Hines* v. *Langley* (1882), 85 Ind. 77; *Fouch* v. *Wilson* (1877), 60 Ind. 64, 28 Am. Rep. 651. Where 7. a husband purchases land, and executes his own note for the purchase price, which note remains unpaid, and causes the land to be conveyed to his wife, who pays no consideration therefor, the vendor may establish a lien against the land, the wife being a mere volunteer. *Strohn* v. *Good* (1888), 113 Ind. 93, 14 N. E. 901; *Humphrey* v. *Thorn* (1878), 63 Ind. 296; *Martin* v. *Cauble* (1880), 72 Ind. 67, 74. The rule is the same where the wife pays the purchase price in part, and the husband executes his note for the balance. *Scott* v. *Edgar, supra; Anderson* v. *Tannehill* (1873), 42 Ind. 141. The technical relation 8. of vendor and vendee is not necessary to the creating and existence of the lien in favor of one party against the lands of another. *Barrett* v. *Lewis* (1886), 106 Ind. 120,

5 N. E. 910; *John* v. *Sewell* (1870), 33 Ind. 1; *Fleece* v. *Orear* (1882), 83 Ind. 200; *Dwenger* v. *Branigan* (1884), 95 Ind. 221. "A vendor's lien is an ancient rule, and had its origin in the principle of natural justice and equity, which impresses the conscience that it is not fair for a vendee of lands, who gives no other security, to have, as between the parties, the absolute estate until he has fully paid for it. It rests upon the same foundation as the doctrine of subrogation. * * * It is created by the law solely to secure the payment of the purchase money. It is therefore an incident of the debt. * * * And continues to exist until the debt is paid or otherwise discharged." *Cassell* v. *Lowry* (1904), 164 Ind. 1, 72 N. E. 640.

9. A tenant by the entireties owns merely the entire estate. If owned in fee, such an estate is not greater in quantity than any other estate in fee. As argued, it would, therefore, seem to follow as a natural sequence from the foregoing principles, that where lands are purchased and conveyed to a husband and wife as tenants by the entireties, and the husband executes his note for the purchase price, which note remains unpaid, or where the wife pays a part of the consideration for the conveyance, and the husband executes his note for the balance thereof, which balance remains unpaid, and where in the latter case the wife at the time of the conveyance has or is chargeable with knowledge of the facts, the vendor may enforce his lien against the lands.

In the case at bar, however, the facts which destroy the apparent lien of the mortgage against lot 15, likewise stand as a barrier to the decreeing of a vendor's lien against such lot, based on the note and its nonpayment.

10. Mrs. Meyers was a purchaser for value. As we

have indicated, there was substantial evidence that she with her husband took title by entireties to lot 15, with the distinct agreement with Kuntz and wife that no indebtedness should arise against either of them, and that no note should be executed by reason of the payment of the Hearn claim, except on a condition which failed. Neither she, therefore, nor her husband, owed any debt. It follows that the lien could not arise or be created on said lot, based on the voluntary act of the husband in executing the note, if he did execute it. We conclude, therefore, that prior to their conveyance thereof, Mrs. Meyers and her husband held said lot free from any lien in favor of Kuntz and Kuntz, as the holders of said note. The lien of the mortgage, if it constituted a lien, passed to appellant with its assignment. Likewise the vendor's lien, if it existed, being a mere incident of the debt, passed with the assignment of the note. *Smith* v. *Mills* (1896), 145 Ind. 334, 43 N. E. 564, 44 N. E. 362; *Mulky* v. *Karsell* (1903), 31 Ind. App. 595, 68 N. E. 689. We have held, however, that in neither case was there a lien. The facts were not sufficient to estop Meyers and wife from contesting the existence of a lien on either theory as against appellant, while they owned the lot. Moreover, if the facts were otherwise sufficient to that end, appellant was an assignee with notice. As we have said, his attention was specifically directed to the fact that Meyers and wife, as husband and wife, were named in the body of the mortgage as mortgagors, and that the wife had not signed it. He was informed also that the lot was held by entireties, which fact was disclosed also by the deed records in the recorder's office, and he knew also that

Mrs. Meyers had refused to sign the mortgage by reason of misrepresentations as indicated. This situation was abundantly sufficient to charge appellant with the duty of inquiry, which pursued with diligence, would have disclosed to him the real facts. *Webb* v. *John Hancock, etc., Ins. Co.* (1904), 162 Ind. 616, 69 N. E. 1006, 66 L. R. A. 632.

The mortgage being of record, appellee Parker had constructive notice of its existence and terms. As the deed under which Meyers and wife claimed was a deed in Parker's chain of title, he had notice constructively also that the former held by entireties. *Hazlett* v. *Sinclair* (1881), 76 Ind. 488, 40 Am. Rep. 254; 39 Cyc 1713; 2 Pomeroy, Eq. Jurisp. (2d ed.) §626. Such notice to Parker included that Meyers alone had executed a mortgage on the lot held by entireties. The mortgage being invalid, these facts are, however, unimportant. A like result follows if the record of the mortgage be held to be constructive notice of any vendor's lien that might exist. *Martin* v. *Cauble, supra,* 67, 73. If the facts were sufficient constructively to place him on inquiry, such inquiry diligently prosecuted would have led to actual knowledge of the nonexistence of a lien on either theory.

In view of the situation thus presented, we hold the evidence to be sufficient to sustain the decision. The record is free from error in other respects. Judgment affirmed.

Note.—Reported in 112 N. E. 31. As to sufficiency of deed to create tenancy by entirety, see Ann. Cas. 1912 C 927. As to estoppel of married woman joining with husband in deed of his land to set up dower rights, see Ann. Cas. 1916 C 800.