# Richmond.

## MILLER v. HOLLAND.

### MARCH 29th, 1888.

1. REAL ESTATE—*Lien—Successive alienation.*—Where part of tract of land subject to a lien, is conveyed, the residue is primarily liable for the whole debt, and where there are successive conveyances, the land is liable in the inverse order of the conveyances—that is, each grantee must take the land with all its equitable burdens.

2. IDEM—*Title—Record—Vendee's duty.*—It is the duty of the vendee to examine the records; but whether he does so or not, he will be affected with notice of every fact the knowledge of which might there have been obtained. *Coles* v. *Withers,* 33 Gratt., 186.

3. VENDOR'S LIEN—*Satisfaction by vendee—Remedy against grantor—Case at bar.* C., in 1852, by recorded deed, conveyed to J. M. 297 acres of land, reserving a lien for the purchase money. In 1856, J. M. died, bequeathing his estate to his widow. In 1859, she conveyed one tract so devised her, to N. M. in trust for her three infant children, and married W. In 1863, she and W. conveyed to H. another tract so devised her, to H., embracing the 297 acres whereon the lien was reserved. In 1871, C. filed her bill against W. and wife, and H. to enforce his lien, which H. was compelled to satisfy. H. then sued to subject the land conveyed to N. M., trustee, for his reimbursement:

HELD:

> H. can take nothing by his bill, which must be dismissed, without prejudice, however, to his right to proceed at law against W. and wife on the covenants contained in their deed and against the estate of J. M., deceased.

Appeal from decree of circuit court of Pittsylvania county, rendered February 7th, 1887, in the cause wherein John W. Holland was complainant, and C. C. Miller, L. C. Powell and

Louisa, his wife, and N. C. Miller, trustee, and others, were defendants.

The case is the sequel to the case of *Coles* v. *Withers*, 33 Gratt., 186. The facts necessary to be stated in order to a correct understanding of the question decided by the court are these:

In 1852 Miss Elizabeth D. Coles sold and conveyed to John Rice Miller a tract of land containing 297 acres, situate in Pittsylvania county, reserving a lien on the face of the deed for the unpaid purchase-money, which deed was duly recorded. In 1856 John Rice Miller died, leaving a will whereby he devised and bequeathed to his wife, Louisa P. Miller, the whole of his estate in fee-simple, which consisted of several tracts of land, situate in the said county, and a considerable amount of personalty. In 1859 the widow and sole devisee by deed conveyed to N. C. Miller, as trustee, for the benefit of her three infant children, Charles C. Miller, Louisa C. Miller, and Catharine R. Miller, one of the tracts of land devised by her husband, containing about 1,200 acres. This deed, which on its face purports to have been made for and in consideration of natural love and affection, was duly recorded. Shortly after the execution of this deed, the widow intermarried with one E. D. Withers, who thereupon qualified as administrator *c. t. a.* of John Rice Miller, deceased, and in January, 1863, the said Withers and wife, in consideration of $45,000 in cash, sold and conveyed, with general warranty, to the plaintiff, John W. Holland, a tract of land, known as Farmington, containing 1,356 acres, which the bill alleged was "owned and possessed by the said" grantors "under and by virtue of the last will and testament of the said John Rice Miller, deceased." This conveyance embraced the said tract of 297 acres conveyed by Miss Coles, and upon which there was a vendor's lien as aforesaid.

In 1871 Miss Coles filed her bill in the circuit court of Pittsylvania county against Withers and wife and John W. Hol-

land to enforce her vendor's lien, and finally obtained a decree, which Holland has been compelled to pay. And the object of the present suit, brought by Holland, was to subject the land conveyed to N. C. Miller, trustee, for his indemnity on account of such payment. The bill alleged that the deed to Miller was not founded upon valuable consideration, and upon that ground, among others, the prayer of the bill was based. The court below decreed in the plaintiff's favor, whereupon this appeal was taken.

*Waller R. Staples*, for the appellants.

*Green & Miller and E. C. Burks*, for the appellees.

LEWIS, P., after stating the case, delivered the opinion of the court.

There is no doubt that inasmuch as John Rice Miller died without making provision in his will for the payment of his debts, the whole of his estate, by virtue of the statute, become assets at his death for that purpose. Code 1873, ch. 127, § 3. But it by no means follows from this provision of the statute that the decree subjecting the land of the appellants to the satisfaction of the plaintiff's claim is right. On the contrary, when viewed in the light of certain well-established principles of equity, it is plainly erroneous.

The first of these principles is, that where a part of a tract or parcel of land, subject to a mortgage, or other charge is conveyed, the residue is primarily liable for the whole debt; and where there are successive conveyances, at different times, the land is liable in the inverse order of the conveyances. In other words, each grantee, as the phrase is, "sits in the seat of his grantor," and must take the land with all its equitable burdens. It is the same, in effect, as if the grantor had executed a mortgage on the unsold land for the indemnity of his

grantee, so that a subsequent purchaser with notice of the first or any prior conveyance, takes the land with this increased burden upon it. And the rule, very justly, is the same, whether the land be conveyed for valuable consideration or not; for if it were otherwise it would enable a purchaser with notice of a prior voluntary conveyance to perpetrate a fraud upon the donee, which equity abhors.

It was decided in the case of *Hartley* v. *O'Flaherty*, Lloyd & Gould, temp. Plunket, 216, that "if a mortgagor sells a portion of his equity of redemption for value, or good consideration, the entire residue undisposed of by him is applicable in the first instance to the discharge of the mortgage, and in ease of the *bona fide* purchaser," and that " it is contrary to any principle of justice to say that a person afterward purchasing from that mortgagor shall be in a better situation than the mortgagor himself in respect to any of his rights."

The same question came before the supreme court of New Hampshire, and was ably considered, in the case of *Brown* v. *Simons*, 44 N. H., 475. In that case a mortgagor sold, at different times, portions of the mortgaged premises, and the question was whether the lands retained by him and those sold subsequent to the conveyance under which the plaintiff claimed, ought first to be applied to the mortgage debt, and it was held that they were. In the course of an elaborate opinion the court said: " In the case of the sale by the mortgagor of all the mortgaged property to different purchasers at the same time, their equities must be regarded as equal, and each must contribute ratably to the discharge of the common burden; but if such conveyances are at different times, their equities, though equal as respects the mortgagor, are not equal as respects each other; because, as the land last conveyed, while in the hands of the mortgagor, was primarily liable for the whole debt, it is not equitable that its character should be changed and the charge upon it diminished by a subsequent conveyance; and, besides, if the equities were to be regarded

as equal, that of the first purchaser is prior in point of time; and, neither having the legal title, the maxim, *qui prior est in tempore, portior est in jure*, must apply;" citing *Clowes* v. *Dickinson*, 5 Johns., ch. 240; *La Farge Ins. Co.* v. *Beel*, 22 Barb., 54; *Chase* v. *Woodbury*, 6 Cush., 143, and other cases. See also *Gill* v. *Lyon*, 1 Johns., ch. 447; *Cumming* v. *Cumming*, 3 Ga., 460; *Conrad* v. *Harrison*, 3 Leigh, 532; *M' Clung* v. *Beirne*, 10 Id., 394; *Henkle's Ex'x* v. *Allstadt*, 4 Gratt., 284; *Buchanan* v. *Clark*, 10 Id., 164.

If these principles be sound as respects the sales of mortgaged land, and they are not disputed, *a fortiori*, do they apply to a case like the present, where the land conveyed, though in a general sense assets for the payment of debts, is not affected by any specific lien or charge.

It is very clear, therefore, in the light of these principles, that when the deed to Miller, trustee, was made in 1859, by Mrs. Miller, the sole devisee of her husband, the residue of the estate became primarily liable for the Coles' debt; for the whole estate having been devised to her in fee simple, her right to make the deed, subject to the claims of creditors, is unquestionable. The deed was made *bona fide*, and had it been founded upon valuable consideration, it would be unassailable, even by creditors of the estate. Code 1873, ch. 127, sec. 5. Hence, it was the duty of the plaintiff, before completing his purchase of "Farmington," not only to examine the will of John Rice Miller, deceased, which, as he himself alleges in the bill, was the source from whence the title of his grantors was derived, but to inquire, further, whether or not there had been a prior conveyance of any part of the estate, in order to ascertain the true condition of his own title. And had he performed this duty, he would have been conducted by an examination of the public records to a knowledge of the appellants' deed. But he failed to perform his duty in this particular, and chose to shut his eyes to the inlet of information, and he must now bear the consequences of his folly or neglect. He is not

entitled to the protection of a *bona fide* purchaser without notice, for he is not such a purchaser. On the contrary, he is affected with knowledge of all which he would have discovered had he performed his duty; for "means of knowledge, with the duty of using them, are in equity equivalent to knowledge itself." "It is the duty of the party to examine the records," said the court in *Coles* v. *Withers*, 33 Gratt., 186, "and whether he does so or not, he will be affected with notice of every fact, the knowledge of which might there have been obtained." See, also, *Lamar* v. *Hale*, 79 Va., 147; *Effinger* v. *Hall*, 81 *Id.*, 94 and cases cited.

The same doctrine is forcibly stated by Mr. Justice M'Lean, in delivering the opinion of the court in *Brush* v. *Ware*, 15 Pet., 93, who said: "The question is not whether the defendant in fact saw any of the muniments of title, but whether he was not bound to see them. It will not do for a purchaser to close his eyes to facts, which were open to investigation, by the exercise of that diligence which the law imposes. Such purchasers are not protected. * * * No principle is better established than that a purchaser must look to every part of the title which is essential to its validity." And in the same case it was said that the law requires reasonable diligence in a purchaser to ascertain any defect of title, and that when such defect is brought to his knowledge, no inconvenience will excuse him from the utmost scrutiny. He is a voluntary purchaser, and having notice, the rights of innocent persons are not to be prejudiced through his negligence.

Up this point it was said by the court in *Brown* v. *Simons*, *supra*, that "if the first conveyance by the mortgagor after the mortgage is duly registered by the grantee, he has done all that he can do to give notice of the new burden that is thereby known upon the part which is retained by the mortgagor; and a second purchaser, charged as he clearly is with notice of the mortgage upon the whole land, and when the deed is registered, knowing that the extent of the burden upon his own

purchase must depend upon the fact of there having been a prior conveyance by the mortgagor, would, upon due inquiry, and in the exercise of reasonable diligence, be led by the record to a knowledge of the true state of the title, and the extent of the incumbrance upon the land conveyed to him. This he is directly interested to know, and the first purchaser has placed the means of knowledge reasonably within his reach, and it is his own fault if he neglects to avail himself of it. In the examination of the title to the part he proposes to buy, he is led directly to the original mortgage, and he finds that his is but part of an entire tract in which his grantor has only a right of redemption, and which was originally subject to a common burden, but liable to be affected by a prior sale of another part of the entire tract. Under such circumstances, the different parcels of the tract mortgaged cannot be regarded as separate and distinct, so as to relieve him of the duty to inquire into the title to the other part; but in examining the title to the part he proposes to buy, he is led directly to a deed that puts him on inquiry as to the remaining part of the land."

A different doctrine, as we have said, would lead to fraud upon the rights of innocent persons, as the facts of the present case well illustrate. The deed to Miller, trustee, was founded upon a meritorious consideration, and after that conveyance was made, the residue of the estate was far more than sufficient to satisfy all debts and demands against it. On the other hand, the plaintiff was not a creditor of the estate, but was a voluntary purchaser with notice of the Coles' lien, and also of the Miller deed; for both were duly recorded. He, therefore, took the land with knowledge of the increased burden upon it for the indemnity of the appellants, yet, without reserving a sufficiency of the purchase-money to pay the Coles debt, or taking any measures for his protection, other than the covenant of warranty in the deed from his grantors, he chose to pay the whole of the purchase-money in cash, and now turns around and asks that the land of the appellants be sub-

jected for his indemnity. Clearly, under these circumstances, there is no principle of equity upon which the prayer of the bill can be granted.

The decree is sought to be sustained upon the doctrine of subrogation. It is contended that the plaintiff, having paid the debt to Miss Coles, for the protection of his own interest, is entitled to be substituted to all her rights and remedies for its collection. But the decree goes far beyond this, and accords to him rights which she did not possess. When he purchased the land, he took a part of the estate to which Miss Coles would have been compelled to resort before subjecting the land which had been previously conveyed to the appellants; and can he, a volunteer, with notice of the appellant's rights, occupy a better position than the creditor whose debt he has paid? Surely not. The doctrine of subrogation cannot be perverted so as to work such injustice. It is the creature of equity, and justice is its object. It is founded upon principles of equity and benevolence, and is only to be administered in a clear case, and never to the prejudice of the rights of others. *Enders* v. *Brune*, 4 Rand., 438; *Hudson* v. *Dismukes*, 77 Va., 242; *Rosenbaum* v. *Goodman*, 78 *Id.*, 121; Wallace's Appeal, 59 Pa. St., 401.

As this is decisive of the case, the question of the statute of limitations and other questions discussed at the bar need not be considered. The decree must, therefore, be reversed, and the bill dismissed. The decree to be entered here, however, will be without prejudice to the right of the appellee, Holland, to institute any action or actions at law which he may be advised to institute, either on the covenant of warranty in the deed from Withers and wife of the 10th of January, 1863, or on the official bond of Withers as the administrator *c. t. a.* of John Rice Miller, deceased.

DECREE REVERSED.