12854

NATIONAL BANK OF NEWBERRY v. LIVINGSTON *ET AL.*

(152 S. E., 410)

January, 1929.

268

270

272

274

*Mr. J. B. Hunter,* for appellant,

*Messrs. Thomas & Lumpkin,* also for appellants,

*Messrs. Fred H. Dominick,* and *Neal W. Workman,* for respondent,

March 13, 1930.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

Action by the National Bank of Newberry to foreclose a mortgage upon real estate given to it by the defendant Mills M. Livingston on March 18, 1926, to secure a note for $5,-806.54, dated on that day and due October 15, 1926, with interest after maturity at 8 per cent. per annum and 10 per cent. attorney's fees. The mortgage was duly recorded on the day of its delivery, March 18, 1926. The mortgaged premises were a tract of land containing 428.11 acres, made

up of three separate tracts: One of 163.9 acres; another of 156.43 acres; and a third, known as the Cooley place, of 117.8 acres. The present controversy has arisen in reference to the last-named tract, the Cooley place.

The defendants are:

1. John N. Livingston—an accommodation indorser of the note of the bank.

2. R. E. Livingston—also an accommodation indorser.

3. J. P. Icard—the grantee under a deed of Mills M. Livingston, dated March 6, 1925, of the standing timber upon the 117.8 acre tract, the Cooley place, in consideration of $5,000.00 cash. This timber deed, though dated March 6, 1925, was not recorded until September 18, 1926.

4. The First Carolinas Joint-Stock Land Bank of Columbia—the holder of a mortgage given to it by Mills M. Livingston, dated March 15, 1926, upon the three tracts referred to, to secure a note for $7,000.00, dated on that day, and payable in certain installments, with interest and attorney's fees. This mortgage was duly recorded on March 18, 1926.

5. The Read Phosphate Company—presumably a judgment creditor, as to which there appears no reference in the transcript or elsewhere.

The timber deed from Livingston to Icard, dated March 6, 1925, was not recorded, as stated, until September 18, 1926, after the mortgage to the land bank, dated March 15, 1926, and the mortgage to the Newberry bank, dated March 18, 1926, had been given and duly recorded; the relative priorities would, upon the face of the transaction be: (1) The land bank mortgage upon all three tracts: (2) the Newberry bank mortgage upon all three tracts; and (3) the J. P. Icard deed to the timber upon the Cooley place.

Icard, however, contends that both the land bank and the Newberry bank, at the times of the execution and delivery to them respectively of the mortgages set up by them, had knowledge of the execution and delivery by Livingston to

him of the timber deed, or notice of such facts as would, if pursued with due diligence, have imparted that knowledge to them. He therefore claims that his deed has priority over the mortgages, so far as the timber on the Cooley place is concerned. Both banks deny Icard's contention.

The case was referred to H. K. Boyd, Esq., clerk of Court, and on December 27, 1928, he filed a report, holding that neither the land bank nor the Newberry bank had any notice of the Icard timber deed, and that their mortgages were entitled to priority over it, the land bank first, and the Newberry bank next.

Upon exceptions to this report by Icard, the matter came on to be heard by his Honor, Judge Featherstone, who, on January 9, 1929, filed a decree sustaining the conclusion of the clerk as to the Newberry bank, but reversing it as to the land bank, holding that Icard was entitled to priority over the land bank mortgage, as to the timber on the Cooley place, by reason of the knowledge of the land bank of the prior execution of the timber deed. From this decree both Icard and the land bank have appealed; Icard being appellant as to the Newberry bank mortgage, and respondent as to the land bank mortgage; the land bank being appellant as to the priority over it of the Icard timber deed; and the Newberry bank being respondent as to the priority of its mortgage over the Icard deed; no question being made of the priority of the land bank mortgage over the Newberry bank mortgage.

It appears that after the execution by Livingston of the timber deed to Icard on March 6, 1925, to wit on May 6, 1925, Livingston had given a mortgage upon the Cooley place to Mrs. Wheeler, to secure a note for $1,000.00 dated on that day and due May 6, 1926, with interest from date, and attorney's fees. The mortgage contained the following recital after a description of the Cooley place: "Same being the identical tract of land * * * on which I recently

sold to J. P. Icard the standing timber and *this mortgage is junior to said timber deed.*"

It was recorded on the day of its execution and was satisfied on March 19, 1926, two months before the maturity of the note. The dates of the land bank mortgage, March 15, 1926, of the Newberry bank mortgage, March 18, 1926, and of the satisfaction of the Wheeler mortgage, March 19, 1926, being so nearly contemporaneous, it is fair to assume that the Wheeler mortgage was satisfied out of the funds loaned by the two banks, and naturally both banks knew of its existence. At any rate it was recorded, and, being an incumbrance upon the property proposed to be mortgaged to the banks, it was a matter that affected the equitable interest which they proposed to acquire, and, while not strictly a link in the *chain of title* to the real estate, it was a necessary subject of inquiry in connection with the proposed loans.

In the mortgage of Livingston to the Newberry bank upon the three tracts aggregating 428.11 acres (which included the Cooley place), occurs this statement: "The above mentioned and described land is the identical tract of land described in a mortgage executed by the said Mills M. Livingston to The First Carolinas Joint Stock Land Bank of Columbia, S. C., for Seven Thousand Dollars, bearing date the fifteenth day of March, 1926, and recorded in the office of the Clerk of Court for Newberry County, S. C., in Mortgage Book '38,' at page . . . ., and this mortgage is given and accepted by the parties hereto as and for a second and junior lien on said tract of land."

We do not think that anything could be added to the reasoning and conclusion of his Honor, the Circuit Judge, that the land bank is chargeable with notice of the Icard timber deed; his decree in this respect is affirmed.

II. In regard to the conclusion that the mortgage of the Newberry bank has priority over to the Icard timber deed, the matter is not at all free from doubt. The first anomaly that presents itself is that the decree awards the Newberry

bank the first lien upon the timber on the Cooley place; the Icard deed the second claim, and the land bank the third.

The Newberry bank cannot enforce this priority over the land bank to the timber on the Cooley place, for it has expressly agreed in its mortgage that the land bank should have priority over it to the entire Cooley place, which of course includes the timber; and, the decree holding that the Icard timber deed has priority over the land bank mortgage to the timber, it would seem to follow that Icard has the first claim to the timber.

III. Passing this complication, however, the main issue in reference to the adjudicated priority of the Newberry bank mortgage over the Icard timber deed is whether the recital in the Wheeler mortgage of the existence of that deed was sufficient notice to the Newberry Bank of the existence of the Icard timber deed or of such facts as were sufficient to put the bank upon an inquiry which would have fully developed that fact.

There can be but little doubt after the decision of *Moyle v. Campbell,* 126 S. C., 180, 119 S. E., 186, 190, that the law imputes to a purchaser who proposes to acquire title to real estate, or to one who proposes to acquire a mortgage lien upon it, notice of the recitals contained in any properly record instrument of writing *which forms a link in the chain of title* to the property proposed to be acquired or mortgaged; and that this principle is not at all abrogated by the provisions of Section 5313, Vol. 3, Code.

It is there held: "The law imputes to a purchaser of real estate notice of the recitals contained in the written instruments, forming his chain of title (20 R. C. L., 353, § 15; *Cordova v. Hood,* 17 Wall, 1, 21 L. Ed., 587; see *Aultman v. Utsey,* 34 S. C., 571, 572, 13 S. E., 848), and charges him with the duty of making such reasonable inquiry and investigation as is suggested by the recitals and references therein contained. Generally the means of knowledge and the duty of using them are equivalent to knowledge."

The vital question is whether an unsatisfied, recorded mortgage, which contains a recital of a fact affecting the title under examination, can be considered a *link in the chain of title,* a muniment of the title, or, if not, whether the principle announced should be extended to include such a mortgage, not strictly such link or muniment, but a subject of imperative inquiry in tracing the title under investigation. In either event the person interested in the examination of the title is charged with notice of the recital and of the ultimate fact which a prosecution of such notice would develop.

There is and can be no question but that the Wheeler mortgage, having been duly recorded, was constructive notice of its existence to the Newberry Bank, if it did not as a fact have actual knowledge of it, which under the circumstances can hardly be denied; the inquiry is whether that notice, actual or constructive, extends, to the recital in the mortgage, the fact of the existence of the Icard timber deed.

It is to be borne in mind that at the dates of the land bank and Newberry bank mortgages, *the Wheeler mortgage was open on the books unsatisfied;* a fact which not only made its record constructive notice to the Newberry bank of its contents, *including recitals,* but imposed upon it the duty of an inspection of that record as bearing upon the title to be deduced. It has been held, we think correctly, although it is not necessary now to so decide, that a proposed mortgagee is not bound to go back over the records of *satisfied mortgages* to look for recitals therein. 23 R. C. L., 219. We think that the execution of the two bank mortgages and the satisfaction of the Wheeler mortgage were for all practical purposes to be considered as synchronous. The bank mortgages were not intended to become effective until the Wheeler mortgage was satisfied, and that could not be done until the loans had been perfected with the proceeds of which the Wheeler mortgage was to be satisfied, demonstrating that the parties were fully informed of the existence of the Wheeler mortgage.

Common prudence requires a prospective purchaser or mortgagee to examine the title to property, which necessarily includes, not only the regularity of the title, but its freedom from prior incumbrances. The duty is as imperative in the one case as in the other. It follows that every prior conveyance or mortgage, duly recorded, unsatisfied of record, constitutes constructive notice to him, not only of the actual conveyance or incumbrance, *but of the recitals which affect the title.*

In *Simmons Creek Coal Co. v. Doran,* 142 U. S., 417, 12 S. Ct., 239, 246, 35 L. Ed., 1063, the Court held: *"Caveat emptor* is one of the best settled maxims of the law, and applies exclusively to a purchaser. He must take care, and make due inquiries, or he may not be a *bona fide* purchaser. He is bound not only by *actual,* but also by *constructive* notice, which is the same in its effect as actual notice. He must look to the title papers under which he buys, and is charged with notice of all the facts appearing upon their face, or to the knowledge of which anything there appearing will conduct him. He has no right to shut his eyes or his ears to the inlet of information, and then say he is a *bona fide* purchaser without notice."

In *Northwestern Bank v. Freeman,* 171 U. S., 620, 19 S. Ct., 36, 39, 43 L. Ed., 307, the Court held: "If the bank was charged with notice of that mortgage, it was charged with notice of its contents. 'Notice of a deed is notice of its whole contents, so far as they affect the transaction in which notice of the deed is acquired.' 2 Schvales & L., 315, cited and approved in *Boggs v. Varner,* 6 Watts & S., 469, 473. A purchaser is charged with notice of every fact shown by the records, and is presumed to know every other fact which an examination suggested by the records would have disclosed."

In 20 R. C. L., 353, it is said: "Where a person is charged with notice, or actually knows, of an instrument, he is also charged with notice *of all facts appearing on the face of the*

*instrument or to the knowledge of which anything there appearing would conduct him."*

And in 23 R. C. L., 216: "The rule supported by the best authority is that the record is constructive notice to creditors and subsequent purchasers of such facts as they would have learned from the record, if examined. A purchaser or mortgagee is chargeable with notice of the conditions and recitals contained *in all the recorded instruments forming his chain of title, and the extent of the title conveyed or otherwise affected,* but not that a grantee or mortgagee has any greater interest than that appearing in the recorded instrument. This principle not only applies to recitals in *deeds and mortgages,* but includes those in wills and other records without which the title could not be deduced."

In 41 C. J., 562, it is said: "A person affected by the constructive notice which the record of a mortgage or declaration of trust affords, *is chargeable with knowledge of all such facts as are specifically set forth or recited in the instruments recorded,* including the legal consequences and effect of its various provisions, and also according to some of the authorities, of all such facts as would have been disclosed by a proper investigation, starting from the mortgage as a point of departure—*provided it is a mortgage by one in the chain of title."*

In 1 Jones on Mortgages (7th Ed.), § 524, it is said: *"A mortgage duly recorded is notice not only of the existence of the mortgage, but of all its contents, so far as those fall within the line of the chain of title.* * * * It is notice of a prior unrecorded mortgage referred to in the covenant against incumbrances. It is notice not only to purchasers but to the subsequent creditors as well. * * * The record imparts notice of all the facts which could have been ascertained by an actual examination thereof, including not only those recited in the record, but also material matters suggested thereby, which might be disclosed by reasonable inquiry."

In note to *Lodge v. Simonton,* 23 Am. Dec., 48, it is said: "Not only are the recitals in the conveyance under which a vendee holds immediately binding upon him, *but he is also bound to give heed to the recitals in prior instruments which are necessary to complete his chain of title, and will be affected with notice of those facts to which such recitals refer.* This principle applies not only to recitals in deeds and mortgages, but includes those in wills and records, without which the title could not be deduced. This general doctrine is thus stated by Leonard, C., in *Cambridge Valley Bank v. Delano,* 48 N. Y., 326: "The principle of equity is well established that a purchaser of land is chargeable with notice, by implication, of every fact affecting the title which would be discovered by an examination of the deeds or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable diligence or prudence, ought to become acquainted. If there is sufficient contained in any deed *or record* which a prudent purchaser ought to examine to induce an inquiry in the mind of an intelligent person, he is chargeable with knowledge or notice of the facts so contained.' "

In *Cordova v. Hood,* 17 Wall., 1, 8, 21 L. Ed., 587, it is said: "Wherever inquiry is a duty, the party bound to make it is affected with knowledge of all which he would have discovered had he performed the duty. Means of knowledge with the duty of using them are, in equity, equivalent to knowledge itself."

In *Bank v. Lee,* 99 Ala., 493, 12 So., 572, 573, 19 L. R. A., 705, it is said: "Notice, sufficient to put one on inquiry, is notice of all that such inquiry will naturally lead to."

In *Mettart v. Allen,* 139 Ind., 644, 39 N. E., 239, it is held, quoting syllabus: "A purchaser of land is bound by the facts which an ordinarily diligent examination of the records, and *of the recitals of the instruments recorded affecting the land* conveyed, would disclose."

In *Matt v. Matt,* 156 Iowa, 503, 137 N. W., 489, it is held, quoting syllabus: "Parties cannot complain of want of notice of the form of a mortgage in which they are interested if the mortgage was on record."

In *Kirsch v. Tozier,* 143 N. Y., 390, 38 N. E., 375, 376, 42 Am. St. Rep., 729, the Court said: "The savings bank, when it took its mortgage, had constructive notice of every fact which could have been ascertained *by an inspection of the deeds or mortgages on record* in the chain of title."

In note to 42 Am. St. Rep., 733, Judge Freeman says: "Purchasers of land must be deemed to have examined *every deed and instrument on record affecting their title,* and to have notice of every fact disclosed by the record and every other fact which an inquiry suggested by these records would have led up to"—citing *McPherson v. Rollins,* 107 N. Y., 316, 14 N. E., 411, 1 Am. St. Rep., 826; *Backer v. Pyne,* 130 Ind., 288, 30 N. E., 21, 30 Am. St., Rep., 231; *Stewart v. Matheny,* 66 Miss., 21, 5 So., 387, 14 Am. St. Rep., 539; *Parker v. Conner,* 93 N. Y., 118, 45 Am. Rep., 184.

In *McPherson v. Rollins,* 107 N. Y., 316, 14 N. E., 411, 412, 1 Am. St. Rep., 826, the Court said: "As intending purchasers they must be presumed to investigate the title, and to *examine every deed or instrument forming a part of it,* especially if recorded. They must therefore be deemed to have known every fact so disclosed (*Acer v. Westcott,* 46 N. Y., 384, 7 Am. Rep., 355), and every other fact which an inquiry suggested by those records would have led up to. Thus, they are plainly chargeable with notice of the mortgage, and of all the facts of which the mortgage could inform them."

In a note to *Pyles v. Brown,* 189 Pa., 164, 42 A., 11, 69 Am. St. Rep., 794, it is said: "A vendee is chargeable with notice of the recitals contained in the instruments forming his chain of title. Not only is he bound by recitals in the conveyance under which he immediately holds, *but he must give*

heed to the recitals in prior instruments which are necessary to complete his chain of title, and will be affected with notice of those facts to which such recitals refer. This principle applies not only to recitals in deeds and mortgages, but includes those in wills and records, without which the title could not be deduced."

In *Whistler v. Cole*, 81 Misc. Rep., 519, 143 N. Y. S., 478, the Court held: "A purchaser of land is chargeable with notice by implication of every fact affecting the title and discoverable by an examination of the deeds or other muniments of title of his vendor, and of every fact as to which the purchaser, with reasonable prudence * * * ought to become acquainted."

In *Bank v. Parsons*, 54 Minn., 56, 55 N. W., 825, 40 Am. St. Rep., 299, it is held: "Whatever is sufficient to put a person of ordinary prudence upon inquiry is constructive notice of everything to which that inquiry would presumably have led."

In *Anderson v. Reid*, 14 App. D. C., 54, it was held that a person purchasing land is bound to examine the records, and whether he does so or not he will be charged with notice of every fact the knowledge of which might there have been obtained.

See, also, *Keesling v. Doyle*, 8 Ind. App., 43, 35 N. E., 126; *Healey v. Worth*, 35 Mich., 166; *Miller v. Holland*, 84 Va., 652, 5 S. E., 701; *Fulkerson v. Taylor*, 102 Va., 314, 46 S. E., 309.

In *Smith v. Lockwood*, 100 Minn., 221, 110 N. W., 980, it was held that a purchaser of land has constructive notice of all facts affecting the title of which he would have learned by an examination of the records.

In *Ochoa v. Hernandez y Morales*, 230 U. S., 139, 33 S. Ct., 1033, 57 L. Ed., 1427, it was held that the protection of *bona fide* purchasers and mortgagees under the Mortgage Law Porto Rico, arts. 33, 34, 36, 37, against infirmities in their grantor's title not plainly expressed on the registry, ex-

tends to matters of fact and not of law, and, where the registry gives notice of facts rendering the title invalid, the purchaser relying on the record takes his title subject thereto.

In *Mathieson v. Craven* (D. C.), 228 F., 345, it was held that purchasers are chargeable with notice of those facts of record, or suggested by record, of which they or their attorneys could not have remained in ignorance, save through failure to observe any proper diligence and care.

In *White v. Moffett,* 108 Ark., 490, 158 S. W., 505, it was held that a purchaser of real property must take notice of all prior recorded instruments in the line of his purchased title.

In *Loser v. Plainfield Savings Bank,* 149 Iowa, 672, 128 N. W., 1101, 31 L. R. A. (N. S.), 1112, it was held that an instrument properly recorded is notice to the world, not only of facts therein expressly set forth, but also of all other material facts which an inquiry thereby reasonably suggested would have developed, so that notice is not avoided by variations in names which ought not to mislead a purchaser of ordinary prudence and intelligence.

In *Hewling v. Blake,* 110 Miss., 225, 70 So., 247, it was held that in action to confirm title, facts of record *held* to charge plaintiffs, claiming as *bona fide* purchasers, with notice of defendants' claim under adverse possession.

In *Garrett v. Wiltse,* 252 Mo., 699, 161 S. W., 694, it was held that, under Rev. St., 1909, § 2810, relating to notice by record, a purchaser is charged with constructive notice of everything, in prior recorded deeds, which go to make up the chain of title under which he holds.

In *Maurer v. Friedman,* 197 N. Y., 248, 90 N. E., 814, it was held that a purchaser of land is presumed to investigate his title, and, where any defect or restriction or covenant appears in the recorded chain of title, it is sufficient to charge him with notice.

In *Allison v. White,* 285 Ill., 311, 120 N. E., 809, it was held that a purchaser is chargeable with notice of what ap-

pears on record concerning his chain of title, and, where facts appear which would put a reasonably prudent man on inquiry, he is chargeable with that knowledge which would have been discovered by diligent inquiry.

In *Griggs v. Houston Oil Co. of Texas* (Tex. Com. App.), 213 S. W., 261, it was held that land purchasers are charged with knowledge of all facts appearing in recorded instruments, and, where circumstances appear in chain of title sufficient to put a reasonably prudent man on inquiry, the purchaser is charged with knowledge of facts which might have been discovered by reasonable inquiry.

In *Simmons v. Simmons,* 85 W. Va., 25, 100 S. E., 743, it was held that, generally, whatever is sufficient on the face of the record of title to land to direct a purchaser's attention to prior rights and equities of third persons will put him upon inquiry and will amount to notice to him, as he is bound to take notice of everything disclosed by the record.

In *Bank v. Rogers,* 87 Fla., 147, 99 So., 546, it was held that purchasers of land are chargeable with notice of liens, conveyances, contracts, or judicial proceedings affecting the title or ownership thereto disclosed by official records.

In *Glover v. Brown,* 32 Idaho, 426, 184 P., 649, it was held that one claiming title to lands is chargeable with notice of every matter affecting the estate which appears on the face of any recorded deed forming an essential link in his chain of title, and also with notice of such matters as he might have learned by inquiry which the recitals in such instruments made it his duty to pursue.

In *Simmons v. Parker,* 61 Ind. App., 403, 112 N. E., 31, it was held that, where there is a mortgage of land on record, the buyer is charged with constructive notice of the fact, of the parties executing it, and of its recitals.

In *Simms v. Thompson,* 291 Mo., 493, 236 S. W., 876, it was held that the purchaser of land is charged with constructive notice of everything contained or recited in the recorded

deeds which lie in and constitute the chain of title under which he holds.

In *Whayne. v. Seamans,* 95 Okl., 168, 217 P., 859 and *Bynum v. Moore,* 101 Okl., 128, 223 P., 687, it was held that a purchaser of lands who buys in reliance upon the record title is chargeable with all the notice brought to him by the records, and, if the record contains matters that · would put a person of ordinary prudence upon inquiry into the nature of the title of the grantor or of the rights and equities of a former owner, then the law charges such purchaser with all the knowledge an inquiry upon his part, prosecuted with reasonable diligence, would have brought him.

In *Houston Oil Co. of Texas v. Lane* (Tex. Civ. App.) 200 S. W., 216, it was held that every purchaser of land is chargeable with all that real estate records show in claim of title under which he claims, including all recitations therein.

The situation was simply this: The Newberry bank, proposing to take a mortgage upon the Cooley place and other tracts, was in duty bound to examine the record for liens upon or defects in the title of Livingston to the Cooley place which would affect the equitable lien which it proposed to take; it was not only bound by constructive notice through the record of the Wheeler mortgage of that mortgage and of the recitals therein contained, but it had actual notice of that mortgage, and was bound by all that appeared in it.

The Newberry bank authorized Mr. Workman to draw up the mortgage which it proposed to take from Livingston; in that matter he acted as agent of the bank though without compensation from it, looking to Livingston therefor; he was informed of the Wheeler mortgage containing the recital referring to the Icard timber deed, and his knowledge is imputable to the Newberry bank. Mr. Workman testified: "My firm represented Mr. M. M. Livingston in the negotiation of a loan for him from the First Carolinas Joint Stock Bank. I prepared the abstract for said bank. At the time the

loan was consummated, The National Bank of Newberry having decided and agreed to take the second mortgage, and knowing that I had prepared the abstract for the Land Bank, requested Mr. Livingston to have a second mortgage prepared, and suggested that inasmuch as I was handling the matter that I prepare the mortgage."

We think therefore that the decree of his Honor, the Circuit Judge, is erroneous in holding that the Newberry bank is not chargeable with knowledge of the Icard timber deed.

The judgment of this Court is that the decree of the Circuit Court be modified as herein indicated, and that the case be remanded to that Court for such further orders as may be consistent with the conclusions announced.

MR. ACTING ASSOCIATE JUSTICE SMITH concurs.

MR. CHIEF JUSTICE WATTS concurs in result.

MESSRS. JUSTICES BLEASE and CARTER did not participate.

MR. ACTING ASSOCIATE JUSTICE GRAYDON (dissenting): I regret that I am unable to concur with the leading opinion in this case and I will state the reasons for my dissent.

The statement of facts contained in the opinion of Mr. Justice Cothran are in the main correct as to material points except as to a statement on pages 2 and 3 that the Icard deed covers the timber on the Cooley place. This is a perfectly natural mistake, as will be shown herein, for the reason that the recitation in the Wheeler mortgage stated that the same was the identical tract of land on which Mrs. Livingston had recently sold Icard the standing timber, and not two other tracts.

Under the law, as I understand it, there are two classes of notice with reference to real estate. The first is commonly known and designated as *constructive notice* and is that notice which is imputed to a person by reason of the recording of an instrument which is permitted or required to be recorded. Under constructive notice it makes no difference whether the person whom it affects knew of the recorded in-

strument or not. The mere recording is sufficient to put all persons upon notice, as a matter of law, of its existence, its terms, and contents. Constructive notice of an instrument being a matter of statutory enactment, this Court has held repeatedly that, for it to be binding upon any one, the instrument must not only be recorded, but it must be in such condition that it is entitled to be recorded as a matter of law under the terms of the statute. The reason for this rule is apparent. This being a right conferred by statute and in derogation or limitation of the common law, the statute must be strictly complied with in every respect, and failure to comply strictly makes the attempted recording not operate as notice as a matter of law. It has been uniformly held by this Court that, where an instrument is not probated properly, even though it is recorded in the proper book, it does not constitute constructive notice.

Up to the Act of 1888 (20 St. at Large, p. 15) there had been adopted by the Supreme Court a rule that possession of real estate was in itself *constructive notice* of a claim to said real estate. The Supreme Court so ruled in a number of cases, and the Legislature, evidently feeling that the doctrine of *constructive notice* had been improperly enlarged, passed the Act of 1888, now 5313, Vol. 3, Code of 1922, which declares that possession of real estate is only notice of a claim when the notice is of the instrument itself or of its nature and purport. In other words, the Act of 1888 forever abolished the doctrine of *constructive notice,* except as to duly recorded instruments. Of course, if a person knew of the instrument itself or of its nature and purport, that would be *actual notice as a matter of law* and would not depend upon any recording, *constructive notice,* or any other outside fact.

We may, therefore, safely conclude that, since the Act of 1888, the only *constructive notice* existing in this state is of an instrument properly recorded in the correct book, properly

probated, which completely complies with every provision of the recording act or acts.

The second class of notice is *actual notice,* and we shall dispose of the facts and circumstances through which it is claimed that the National Bank of Newberry had *actual notice* of this instrument. The only testimony, considered by the majority opinion, along this line is that Mr. Workman, who drew the mortgage for Livingston to give the National Bank of Newberry, had knowledge of the existence of this ` paper, which knowledge was therefore imputable to the National Bank of Newberry. The master set forth that no such notice existed as a matter of fact, and this was concurred in by the Circuit Judge. Under the rule of this Court, whch has been extant for more than one hundred years, a concurrent finding of a matter of fact in an equity case by the master and the Circuit Judge will not be disturbed, unless such finding is clearly against the testimony. I cannot see how, under any view of the testimony, notice on the part of Workman, who was preparing the mortgage for the mortgagor, could possibly be imputed to the mortgagee. The bar of this state has always taken the position, which has been repeatedly commended by the Supreme Court, that a lawyer cannot serve two clients in one and the same transaction whose interests are at variance. I can think of no case where the interests of the lender and the borrower are not at variance. I do not think that, even if the bank had retained Mr. Workman only to draw the mortgage, that notice which he had would be sufficient to put the Bank of Newberry on notice.

This finding, on the part of the leading opinion, that the bank had actual notice by reason of Mr. Workman's connection in the matter is put at the end of the opinion and is merely an added reason for the reversing of the order of the Circuit Judge, in my opinion. I do not feel that such finding is any more than an additional reason outside of the main issue of the case, and I shall therefore pass on the main issue.

The main position in the leading opinion is that the Bank of Newberry had notice, *constructive* I presume, because Mills M. Livingston, the owner of the tracts of land involved in this dispute, gave a mortgage to Mrs. Leonora C. Wheeler on May 6, 1925, which was properly recorded prior to the Bank of Newberry's mortgage, for the sum of $1,000.00 on a portion of his land commonly called the Cooley place, and in this mortgage stated that this was the same land on which the standing timber was recently sold to Icard, and that the mortgage was junior to said timber deed. That such recital in a collateral instrument *not in the chain of title* and in which the Bank of Newberry was in no wise interested, as I shall demonstrate, was not sufficent *constructive notice* to put the Bank of Newberry on inquiry as to the existence, terms, nature, and purport of the Icard timber deed. The first fact that should be kept in mind is that Icard did not have a timber deed on the Cooley place alone, but had a timber deed on two other tracts of land which are involved in this dispute. Therefore, the recitation in the Wheeler mortgage was erroneous, incorrect, and misleading in the first place because it did not correctly state even the tract of land over which the Icard timber deed was alleged to have been given. This mortgage says that it is the same land on which Icard bought the standing timber, whereas as a matter of fact it was only a portion of the land upon which Icard bought the timber and on which Icard is now claiming the timber.

An examination of the alleged timber deed in question discloses that it is really not a fee simple deed to the standing timber, but is simply a lease on the same with the privilege of cutting and removing the same within five years. The habendum clause and the tenendum clause both state clearly and distinctly that the contract is for a period of five years to cut and remove the timber, and a warranty is given for a period of five years only to cut the timber. So, under my construction of the instrument which was given to Icard, although commonly designated as a deed, at best it is a *fee*

*defeasible* and not a deed in fee simple as would be concluded from the recital in the mortage. I therefore conclude that the recital in the Wheeler mortgage did not give a correct statement of the nature of the instrument nor of its nature and purport, nor did it give sufficient information of the instrument itself as to place any one on notice as to its nature or purport. I hold that, had the entire timber deed been incorporated in the mortgage, there would still be a serious question as to whether or not it would constitute *actual,* not *constructive, notice,* but, where the meager description of the alleged timber deed is given which admittedly is erroneous in at least two particulars, I cannot see how, under the law, it could possibly constitute notice to subsequent lienees or purchasers.

There is still another reason why the Bank of Newberry should not be charged with notice in this matter. The leading opinion admits that one is not charged with notice of the recitals contained in satisfied mortgages. The Joint-Stock Land Bank was to take a first mortgage on these premises clearing up all liens then existing, including the lien of the Wheeler mortgage, and this mortgage was to be paid before the Land Bank's mortgage could be taken. I think that the Bank of Newberry had a perfect right to conclude that all liens were satisfied, and, although the actual satisfaction was not entered of record until the 20th of March, 1926, the Wheeler mortgage was paid on the 18th of March, 1926, prior to the execution of the mortgage to the Bank of Newberry. Let us see what position the Court is in with reference to this. Suppose the Wheeler mortgage was paid and exhibited to the Bank of Newberry, but was not marked satisfied on the book for some weeks after? Could this Court hold that, where the bank actually saw the paper satisfied, the mere fact that it was still open on the books would be sufficient to charge it with constructive notice of recitals existing not material to the mortgage? I therefore think that, this mortgage having been actually satisfied before the Bank

of Newberry's mortgage was taken as a matter of course, there was no duty upon the bank in any event to examine the recital therein.

This leads me to the main contention in the leading opinion, and that is because in the Wheeler mortgage there was an erroneous reference to an unrecorded paper then supposed to be existing that such recital is sufficient to place a person upon inquiry as to the existence of some instrument of like import and nature. If this rule is laid down, it would be wise in the future for lawyers to advise their clients with reference to real estate not to record their deeds, but simply have a recitation made to them in another recorded instrument which would give far more protection and far more notice than the instrument itself. There may be a fatal defect in the deed. It may not be probated. It may not be subject to be recorded. It may not be properly excluded. The description of the land may be totally and fatally defective. The actual terms and conditions of the deed may be against public policy. The deed may cover land which is not subject to be alienated as a matter of law. The deed may be a forged instrument which the clerk would not record. The deed may be supposedly given by a person who at the time of its execution was dead, but these trivial defects will amount to naught, if a recital is contained in a collateral instrument referring to it. Under the leading opinion in this case, when a person has notice of the execution of a paper through a collateral recorded instrument, it is even stronger than the recording of the paper itself.

I have carefully gone over all of the decisions cited by Mr. Justice Cothran, and in my opinion the same are not authority for the proposition that recitals in a mortgage *not in the direct chain of title* are sufficient to put a subsequent lienee or mortgagee on inquiry as to the existence of some instrument referred to in a collateral mortgage. I heartily concur that all decisions which hold that recitals in a deed, will, judicial decree, or mortgage which constitute an *integral*

*link in the chain of title are binding upon all subsequent purchasers and lienees* and, in my opinion, an examination of the decisions cited by him will only show this rule and no more.

The case of *Moyle v. Campbell,* 126 S. C., 180, 119 S. E., 186, in my opinion, is authority for the position taken by me and is not authority for the position taken in the leading opinion. This case clearly and distinctly holds that actual notice is only equivalent to recording, where such notice is of the instrument itself or of its nature and purport. The rule is clearly laid down by the Court that it is incumbent upon the person claiming under an unrecorded instrument to show by the preponderance of the evidence that the subsequent purchaser had actual notice of the instrument itself or of its nature and purport. The Court cites Sec. 5313, Vol. 3, Code of 1922, as authority for this proposition, and that section, which is the statute of 1888, which clearly states that no possession of real property described in any instrument of writing required by law to be recorded will operate as notice of such instrument; and *actual notice* shall be deemed and held sufficient to supply the place of registration only when such notice *is of the instrument itself or of its nature and purport.*

The case of *Simmons Creek Co. v. Doran,* 142 U. S., 417, 12 S. Ct., 239, 35 L. Ed., 1063, bases the decision upon the doctrine of *caveat emptor.* Of course, such doctrine does not exist in South Carolina. This case further holds that actual possession of land is sufficient notice to put a subsequent purchaser on inquiry, but, of course, this decision is in direct contradiction of Section 5313 of the Code above referred to. This case further holds that, where a description is to be found in a *deed in the chain of title* that a subsequent purchaser is charged with notice of the description, provided, *it is in the chain of title.*

*Northwestern Bank v. Freeman,* 171 U. S., 620, 19 S. Ct., 36, 43 L. Ed., 307, has to do with a mortgage over certain personal property, to wit, some sheep. The Court here holds

that where a prior mortgage exists describing certain sheep in the name of the same party giving the second mortgage, such description was sufficient to put the subsequent mortgagee on notice that the sheep involved in both transactions were one and the same. In other words, this was a question of identifying the property under a chattel mortgage.

The citation from 20 R. C. L., 353, is under the question of "Notice" and in no wise affects the question here at issue, in my opinion, as to what constitutes the chain of title. The citation in 23 R. C. L., is under the question of "Records" and under the same head, at page 219, § 80, it is held: "A record of an instrument is constructive notice of those matters only that are required to be stated." It was seen that under this rule, there being no necessity for the recital about the Icard deed, it would not be notice.

The citation from 41 C. J., 562, in which it is expressly held that the paper in question must be in the chain of title.

The citation from 1 Jones on Mortgages (7th Ed.), § 524, in my opinion, merely holds the same thing, that the mortgage must be in the line of the chain of title.

The quotation from 23 Am. Dec., 48, is taken from a note under the case of *Lodge v. Simonton,* and simply lays down the rule that the chain of title is the governing factor as to binding recitals. It is interesting to note that in this case the question was whether or not under a certain will of Hunter through which Simonton claimed, together with other circumstances, sufficient notice was given of the claim of Lodge as to one-half of the land in dispute. The lower Court held that it was, but the upper Court reversed the decision and granted a new trial on the ground that the description in the will referred to no particular tract, and that the notice was therefore vague and uncertain. It would seem that this case would be authority that vague and certain recitals, even in an instrument in the direct chain of title, are not sufficient to put a person on notice of itself and would not be sufficient to bind a subsequent purchaser.

*Cordova v. Hood,* 71 Wall., 1, 21 L. Ed., 587, involves a question of vendor's lien reserved in a deed under the Texas law. The deed was in the *direct chain of title,* and the Court held that the lien existed until it was properly satisfied of record or until waiver could be shown. This recital, it will be seen, was in a deed constituting a link in the chain of title.

The case of *Mettart v. Allen,* 139 Ind., 644, 39 N. E., 239, 240, seems to hold that a purchaser is bound by facts which an ordinary diligent examination of the record and a recital of the instruments recorded would disclose. The case, however, was not decided on this theory. The Court said: "The appellant Mettart is chargeable with the *recitals in said deed* of Martin Worl, an examination of which would have disclosed to him that this land had been previously owned by said Worl." But the finding of the Court was based on the fact, "that Mettart had actual knowledge of all these facts, aside from that with which he is chargeable from the recital in Worl's deed."

*Kirsch v. Tozier,* 143 N. Y., 390, 38 N. E., 375, 42 Am. St. Rep., 729, deals with the satisfaction of a mortgage by a trustee in contravention of the trust. The Court lays down the proper rule that in trust estates it is the duty of the purchaser to inquire into the nature and extent of the trust which is disclosed from the record. The rule as to trust estates is much stricter than that of any other estate. The law throws around a trust safeguards which do not and could not apply to other instruments.

*Pyles v. Brown,* 189 Pa., 164, 42 A., 11, 69 Am. St. Rep., 794, holds that recitals in a satisfied mortgage do not constitute notice. This case further holds that a person who fails to record his title has every presumption against him, and that vague and indefinite recitals are not sufficient to put him on notice. This case would seem to sustain the position that such recitals as are in the Wheeler mortgage would not be sufficient.

*Mercantile National Bank v. Parson,* 54 Minn., 56, 55 N. W., 825, 40 Am. St. Rep., 299, involves a trust estate, where the word trustee is used without designating the nature or character of the trust. The Court holds that no more than ordinary prudence should be used in ascertaining the nature of the trust. This case seems to be in conflict, in my opinion, with the general rule as to the trust estates, and has no application to the case at bar.

*Smith v. Lockwood,* 100 Minn., 221, 110 N. W., 980, involves the question of an easement of which a *bona fide* purchaser did not have notice. The Court held that good title passed, free of the easement.

*Ochoa v. Moralez,* 230 U. S., 139, 33 S. Ct., 1033, 57 L. Ed., 1427, is a case from the Province of Porto Rico and involves the construction of a Porto Rican statute. The Court lays down the rule that a person is charged with notice of facts which are registered under the laws of Porto Rico.

*Mathieson v. Craven* (D. C.), 228 F., 345, involves recitals in a will creating a charge upon certain funds. A proper examination of the *chain of title* would have disclosed these facts, and the Court holds that subsequent purchasers had *constructive notice* thereof.

*Hewling v. Blake,* 110 Miss., 225, 70 So., 247, in my opinion, is in direct conflict with Section 5313, Vol. 3, Code of 1922, in that it holds mere possession of real property to be sufficient to put a person on inquiry as to the nature of such possession.

*Garrett v. Wiltse,* 252 Mo., 699, 161 S. W., 694, is authority for only the proposition that a recital *in the direct chain of title* is binding upon subsequent purchasers.

*Allison v. White,* 285 Ill., 311, 120 N. E., 809, also is authority for the proposition that recitals appearing *in the record chain of title are notice to the purchaser.* This case further holds that subsequent purchasers are not chargeable with notice of facts contained in records not in their chain of title.

*Loser v. Plainfield Savings Bank,* 149 Iowa, 672, 128 N. W., 1101, 31 L. R. A. (N. S.), 1112, involves the use of two names of a person mortgaging a piece of property. It charges the purchaser with a duty of examining the records as to the use of such names.

*White v. Moffett,* 108 Ark., 490, 158 S. W., 505, lays down the rule that a purchaser takes notice of all prior recorded instruments *in the line of his purchase title,* and that a purchaser gets a good title as against an unrecorded prior deed from his grantor.

*Griggs v. Houston Oil Co. of Taxes* (Tex. Com. App.), 213 S. W., 261, is a case where a deed is given in the name of Elizabeth O. Griggs. Subsequently a power of attorney is recorded in the name of Mrs. Elizabeth O. Griggs. The Court holds that this was sufficient notice that Mrs. Griggs was a married woman.

*Glover v. Brown,* 32 Idaho, 426, 184 P., 649, is authority that a person is charged with notice of any fact that appears on the face of a recorded deed which is *an essential link in his chain of title.*

*Simmons v. Myers,* 61 Ind. App., 403, 112 N. E., 31, holds that a purchaser of land is charged with *constructive notice* of a fact stated in a deed of the party from whom he purchased, and the recitals therein contained.

*Simms v. Thompson,* 291 Mo., 493, 236 S. W., 876, is authority for the proposition that a purchaser is charged with knowledge of the recitals contained in recorded deeds *which constitute the chain of title under which he holds.*

*Whayne v. Seamons,* 95 Okl., 168, 217 P., 859, lays down the rule that there is no duty upon a person who has a perfect and valid legal title to make outside investigation of the title, unless there is some reason therefor.

*Houston Oil Co. of Texas v. Lane* (Tex. Civ. App.), 200 S. W., 216, involves the question of a description of land in a deed in the chain of title.

Of like import are the cases of *Bank v. Lee,* 99 Ala., 493, 12 So., 572, 19 L. R. A., 705;. *Whisler v. Cole,* 81 Misc. Rep., 519, 143 N. Y. S., 478; *Miller v. Holland,* 84 Va., 652, 5 S. E., 701; *Fulkerson v. Taylor,* 102 Va., 314, 46 S. E., 309; *Keesling v. Doyle,* 8 Ind. App. 43, 35 N. E., 126; *Maurer v. Friedman,* 197 N. Y., 248, 90 N. E., 814; *Simons v. Simmons,* 85 W. Va., 25, 100 S. E., 743; *Bank v. Rogers,* 87 Fla., 147, 99 So., 546.

And the other cases and citations are all authority only for the proposition that recitals contained in deeds, mortgages, or proceedings *in the direct chain of title* are constructive notice to a prospective purchaser.

I think the correct rule is laid down in Pomeroy's Equity Jurisprudence (4th Ed.), Vol. 2, p. 1199 § 626. I quote this entire paragraph to show that this is the general rule, and that no exceptions are noted thereto:

*"By Recital or Reference in Instruments of Title—General Rule*—Wherever a purchaser holds under a conveyance, and is obliged to make out his title through that deed, or through a series of prior deeds, the general rule is firmly established that he has constructive notice of every matter connected with or affecting the estate which appears, either by description of parties, by recital, by reference, or otherwise, on the face of any deed which forms an essential link in the chain of instruments through which he must derive his title. The reasons for this doctrine are obvious and most convincing; in fact there could be no security in land ownership unless it were strictly enforced. The right of such a purchaser is, under our system of conveyancing, confined to the instruments which constitute his chain of title, which are his title deeds, and everything appearing in those instruments and forming a legitimate part thereof is a necessary element of his title. The rationale of the rule is equally clear and certain. Any description, recital of fact, reference to other documents, puts the purchaser upon an inquiry; he is bound to follow up this inquiry step by step, from one

discovery to another, from one instrument to another, until the whole series of title deeds is exhausted, and a complete knowledge of all the matters referred to in their provisions and affecting the estate is obtained. Being thus put upon the inquiry, he is conclusively presumed to have prosecuted it until its final result, and with ultimate success. The purchaser's ignorance that a particular instrument forming a link in his chain of title was in existence, and his consequent failure to examine it, would not in the slightest affect the operation of the rule. An imperative duty is laid upon him to ascertain *all* the instruments which constitute essential parts of his title, and to inform himself of all that they contain."

It is interesting to note that under this section are cited more than a hundred cases sustaining the rule. See, also, Sections 627, 628, and 629 of the same work. I do not think that anything that I could say could add to or take away from the clear and unequivocal quotation of one of the greatest equity text-writers in the entire history of our jurisprudence. This very section is cited in many of the cases referred to in the leading opinion, and seems to have been the compelling authority for a great many of such decisions. I think therefore that the correct rule is as laid down by Pomeroy.

This is a case of novel impression not only in South Carolina but in every other State where I have examined the decisions. The rule will be broader here than in any other State in the Union. In spite of the efforts of the Legislature to confine constructive notice to duly recorded instruments under the statute, this Court will enlarge the doctrine to where Section 5313 is limited at least. The chain of title in South Carolina will include, not only the deeds, wills, decrees, foreclosed mortgages, but will include every collateral instrument, however insignificant, with all of the various recitals therein contained. In this respect the case is certainly one of most novel impression. South Carolina will blaze the

trail with respect to constructive notice contained in unessential recitals in collateral instruments.

I think that the recording laws, being creatures of the Statute, should be strictly complied with to give protection, and that a person who negligently fails to record a paper should be denied protection, except in cases of actual notice under the rules laid down by this Court. I do not feel that this Court should place a premium upon Icard's failure to record his timber contract. The clerk's office was open to him, and he was the author of his own destruction. He was the·captain of the ship who ignored the compass given by the law and found himself stranded upon the rock of carelessness. He now asks that this Court go out of the channel of the declared law and· throw to him the rope of judicial construction to save his vessel. Like the law of the sea, whenever a vesel leaves the channel which is marked and traveled, sooner or later it will reach the rocks and go down by reason of its failure to adhere to the charted course.

I therefore, for the reasons herein stated, respectfully dissent from the leading opinion in this case.

The judgment of this Court should be that the judgment of the Circuit Court be affirmed.

MR. JUSTICE STABLER concurs.